W. E. STANSBURY, Trustee, v. BANK OF AMORY, et al.

Western Section. May 8, 1931.

Petition for Certiorari denied by Supreme Court, January 23, 1932.

674

[REDACTED]

Hamilton E. Little and Holmes, Canale, Loch & Glankler, all of Memphis, for appellee.

Randolph, Randolph & Clifton and W. C. Pope, Guardian ad litem, all of Memphis, for appellant.

OWEN, J. W. E. Stansbury as Trustee for the Columbia Mortgage & Trust Company filed a bill of interpleader making the Bank of Amory, Mississippi and Dorothy Bruce Martin, a minor, defendants. A controversy arose over the proceeds of bond No. 214 issued by the Columbia Mortgage & Trust Company. The bond was for the sum of $5,000. The Trustee had about sixty per cent of the amount of said bond to be distributed to the rightful holder of same.

The Chancellor sustained complainant's bill and decreed that the minor, Dorothy Bruce Martin, was entitled to the proceeds. The Bank of Amory appealed and has assigned nine errors. These errors raise the following propositions:

(1) The Court erred in holding that Mrs. Boyd, the mother and guardian of the minor, Dorothy Bruce Martin, had made a gift of the bond in controversy to her daughter.

(2) The Court erred in not holding that under the Negotiable Instruments Law, the bank had a good title to bond No. 214, for the bank was a purchaser for value. The bank had no notice of any defect when it purchased the bond, and the bank upon investigation would have discovered that the guardian, Mrs. Boyd, had power to sell the bond.

(3) The Court should have held that the equities of the bank and the minor are equal, and the bank being an innocent purchaser for value has a good title to the bond.

(4) The Court erred in not holding that the minor's interest was best protected by having her money invested in the apartment building in which Mrs. Boyd placed the money instead of in bond 214. The Court should have ratified this investment of the minor's money in realty.

(5) The Court erred in taxing the Bank of Amory with the costs of the suit.

Mrs. Lena H. Boyd was made a defendant to complainant's bill individually, and as guardian of Dorothy Bruce Martin she made no defense, and a pro confesso was entered as to her.

W. C. Pope, a solicitor of the Chancery Court of Shelby County, was appointed guardian ad litem for the minor defendant, Dorothy Bruce Martin. The guardian ad litem filed a lengthy answer wherein he insisted that his ward was entitled to the proceeds of said bond 214.

The Bank of Amory filed a demurrer which was overruled, then filed an answer insisting that it was the true and lawful owner of bond 214.

It appears further that during the progress of this law suit Stansbury resigned as Trustee, and Wassell Randolph, Esq. became Trustee for said Columbia Mortgage & Trust Company, and the cause was revived in his name.

A number of depositions were taken. Chancellor Ketchum filed an opinion setting forth fully the facts, and in which finding of facts we concur and quote from said opinion as follows:—

(1) Henry E. Graper died in 1924 leaving surviving him his widow, Mrs. Lena H. Graper, one son, Henry E. Graper, Jr., and one step-daughter, Dorothy Bruce Martin, the daughter of his wife by a former marriage. He left a will which was admitted to probate in Henderson County, in which he made liberal provisions out of his property and life insurance for the support and maintenance of his family, and for the education of said children; and named his wife as guardian of said children and excused her from giving any bond or making any accounting to any court as such guardian.

Mrs. Graper duly qualified as such guardian for her daughter, Dorothy Bruce Martin, in the County Court of Henderson County.

Since the death of H. E. Graper, Mrs. Graper has intermarried with Dr. L. F. Boyd, and she is now Mrs. Lena H. Boyd.

(2) On November 5, 1924, Mrs. Lena H. Graper purchased from the Columbia Mortgage & Trust Company its first mortgage debenture bond No. 214 of series 8, for $5,000, which is the bond now in controversy. This bond was on its face payable to the order of Mrs. Lena H. Graper; was dated November 5, 1924, and matured

November 5, 1929; and interest thereon was payable semi-annually at six per cent. It was registered in the name of Mrs. Lena H. Graper on the books of the Columbia Mortgage & Trust Company and of the Columbia Savings Bank, the Trustee in the trust indenture securing said bonds.

Thereafter, on February 18, 1925, Mrs. Graper, by endorsement on the back thereof, assigned and transferred said bond to Dorothy Bruce Martin, and this transfer was also noted on the bond register of the Columbia Mortgage & Trust Company, and said Columbia Savings Bank. And on August 4, 1925, Mrs. Lena H. Graper, as guardian of Dorothy Bruce Martin, by an assignment in writing and attached to said bond, assigned the same to Bearer, and this assignment was noted on the bond register of the Columbia Mortgage & Trust Company and the Columbia Savings Bank.

Contemporaneously with this transfer Mrs. Lena H. Graper sold and transferred said bond to William J. Galloway, the representative in Memphis of G. L. Miller & Co., or to G. L. Miller & Co., in exchange for $2,000 of stock in G. L. Miller & Co., and certain G. L. Miller & Co., bonds, which later proved to be worthless, or practically so. This assignment was not noted on the bond register of the Columbia Mortgage & Trust Company and Columbia Savings Bank.

On April 13th, 1926, Galloway, as the representative of G. L. Miller & Co., assigned and transferred said bond No. 214 of series 8 to the bank of Amory. The bank paid for same the sum of $4,900, and accrued interest.

(3) Mrs. Graper had no authority of any court permitting her to sell or exchange said bond for her ward, Dorothy Bruce Martin, and the stock and bonds which she received in exchange for same are not of the character in which a guardian is authorized by statute to invest the funds of his ward.

(4) G. L. Miller & Company failed in September, 1926, and its stock became worthless. On April 21, 1928, Mrs. Boyd (formerly Mrs. Graper) purchased from Block & Goodman an apartment building at the northeast corner of Poplar & Auburndale Streets, in Memphis for $45,000; and as a part of the consideration of this purchase gave $8,000 of G. L. Miller & Company bonds (including $3,000 of said bonds which she received in exchange for the Columbia Mortgage Company bond) at a valuation of $5,000. It was known both by the sellers and the purchaser, that said bonds were at that time practically, if not entirely worthless.

(5) The Columbia Savings Bank, the Trustee in the trust agreement securing said debenture bonds, failed in December, 1927; and the complainant W. E. Stansbury was appointed trustee in its place

and stead. In September, 1928, Stansbury resigned, and Wassell Randolph was duly appointed and qualified as trustee in his place and stead; and this cause was revived in his name as complainant. Since the failure of the Columbia Savings Bank the said trustees have paid one dividend of sixty per cent, and other of five per cent, in liquidation of the bonds in said series 8; and the complainant Wassell Randolph, Trustee, has paid into the register of the Court all the dividends on said bond No. 214 of series 8, now in controversy, amounting to $3250.

(6) C. M. Harrison, President of the Bank of Amory, handled the transaction for the purchase of the bond for his bank. Galloway represented the bond to him as a "Bearer" bond, and he purchased it as such. Miller & Company mailed the bank an invoice showing the amount due for the bond, and the bank remitted for it, and the bond was then mailed to the bank. As soon as Harrison examined the bond the assignment by Dorothy Bruce Martin by .Lena H. Graper, Guardian "challenged his attention and he at once called Galloway" and asked him about it, the transaction being a little out of the ordinary, and he informed him it had been approved by the Columbia Mortgage & Trust Company." He made no further inquiry about the authority of Mrs. Graper to sell the bond.

G. L. Miller & Company collected the installment of interest due November 5, 1925; and the Bank of Amory collected the installments due on this bond beginning in May, 1926, and down to the time of the failure of the Columbia Mortgage & Trust Company.

After the failure of the Columbia Mortgage & Trust Company, and after a question about the title to the bond had arisen, Galloway wrote to the Clerk of the County Court of Henderson County and asked him to get the court to ratify the sale of the bond by the guardian; but the Clerk replied that the court declined to do so, giving as his reason that the guardian was not required to make any accounting to the court; that the court had not ordered her to purchase the bond, and that he did not think he had any right to order a sale of it.

(7) Upon the foregoing facts the sole question to be determined is whether or not the Bank of Amory is an innocent holder of the bond; if it is an innocent holder, it is entitled to the dividends paid on the bond; otherwise, they belong to the infant defendant Dorothy Bruce Martin.

It is unquestioned that the bank paid value for the bond before its maturity; but it is most earnestly insisted by the guardian ad litem that by the assignment by Dorothy Bruce Martin, by Lena H. Graper, Guardian, the Bank was put upon notice that the bond

belonged to a minor, and that it then became its duty to inquire as to the authority of the guardian to make the assignment; and that such inquiry would have revealed the fact that there was no necessity for making the assignment; that the guardian had no authority from any court to make it; and that she exchanged the bond for stock and bonds in which under the laws of this state a guardian is not permitted to invest the funds of his ward; and that therefore the bank is not an innocent holder of the bond.

(8) The pertinent section of the Negotiable Investments Law provided that,

"To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." (Sec. 56 of Act, Shannon, Sec. 3516a64.)

The bank's insistence is that it had no knowledge of any lack of authority in Mrs. Graper to sell the bond, and no knowledge of any fact putting it upon inquiry, so that its action in taking the bond amounted to bad faith within the meaning of this statute; and it also insists that as a matter of fact Mrs. Graper did have the authority to sell the bond. The question, therefore, is whether the Bank of Amory, made the necessary inquiry as to the authority of Mrs. Lena H. Graper, guardian, to assign the bond, and as to the necessity for making the assignment. The assignment challenged his attention the moment he saw it, and he at once called up Galloway and asked him about it, and Galloway assured him it was all right because the Columbia Mortgage & Trust Company recognized the validity of the assignment. But this was not sufficient; it was the duty of the bank, in order to protect itself to make inquiry as to the authority of the guardian to assign the bond, and as to the necessity for making the assignment. Inquiry would have revealed the fact that Mrs. Graper was a Tennessee guardian; that she had no authority from any court to exchange or sell the bond; that she had exchanged it for stock in the G. L. Miller & Company, and for bonds on Florida Hotels, and that under the law a guardian is not permitted to invest the funds of his wards in this character of securities.

In Ford v. Brown, 114 Tenn., 467, C. N. Woodworth had two certificates of deposit issued by the Chattanooga Savings Bank, one payable to the order of C. N. Woodworth, Trustee; and the other to the order of C. N. Woodworth, Trustee for Bettie Ford. Woodworth went to a gambling house in Nashville and there sustained heavy losses in gambling, and in part payment of his losses, he as-

signed to the gambling house these two certificates of deposit. These certificates were sold to the First National Bank of Nashville for cash; the bank forwarded them to Chattanooga for collection and payment was refused by the Chattanooga Savings Bank upon the ground that they were not due, and upon the further ground that payment had been stopped by Betty Ford, the beneficial owner thereof. The First National Bank had no notice of the gambling consideration for the assignment to H. C. Brown & Co. and paid value for the certificates before maturity, and claimed to be an innocent holder. It was held that it was put upon notice by the fact that the certificates were payable to Woodworth as Trustee, and so endorsed by him; and that having failed to make inquiry as to his right to negotiate them it was not an innocent holder. The Court say:

"It will be observed that in the present case each of these certificates of deposit was endorsed by C. N. Woodworth, as Trustee, and we are of opinion that such endorsement prima facie and presumptively fixed the purchaser with actual knowledge of want of authority in the trustee to dispose of the paper for his own benefit."

The case of Bank v. Looney, 99 Tenn., 279, is also referred to, and with reference to that case the Court say:

"It was said by the Chief Justice, who delivered the opinion, that in a controversy between a beneficiary of a trust fund and the holder of a paper disposed of by a trustee in violation of his trust, the word 'trustee' appearing upon the face of the paper, is sufficient to put any taker upon notice."

And it was said that the court in that case referred to the authority of Duncan v. Jordan, 15 Wall., 175, in which it was held that the word 'Trustee' gave notice of the existence of a trust, and that the party taking the paper was charged with the duty of ascertaining what, if any, restrictions were imposed upon the Trustee. And further quoting from Bank v. Looney, it is said:

"The correctness of these holdings is now conceded by the courts with practical unanimity. The effect of them is that, if the Trustee, Sykes, disposed of this paper in violation of his trust, then the word trustee would convert anyone who so obtained it into a constructive trustee, at the instance of the cestui que trust."

In Covington v. Anderson, 84 Tenn. (16 Lea), 310, the German National Bank of Memphis, and the Chemical National Bank of New York were held liable for the value of certain U. S. bonds handled by them for J. A. Anderson, Admr., dbn cta of the estate of Henry O. Woodward, deceased, the proceeds of which were

afterwards wrongfully appropriated by Anderson. The banks did not buy the bonds, but merely handled the negotiations for their sale for Anderson and remitting the proceeds to him for which service they received the usual brokerage or commission.

The facts were that Woodward died in 1869 leaving a will in which he directed his executor, Cochrane, to invest the proceeds of certain insurance policies in U. S. bonds, and to pay the interest therefrom to his widow until his child should become of age. Cochrane qualified as executor and purchased the bonds as directed, and they remained in his possession until his death which occurred in May, 1873. The bonds were payable to Cochrane, as Executor, or his assignee.

Shortly after Cochrane's death Anderson, the Public Administrator qualified as Admr. dbn cta of Woodward's estate, and Cochrane's Administratrix delivered the bonds to him. In December, 1876, Anderson took two of the bonds to Garth, President of the German National Bank, with the request that he sell them for him, stating that he desired to invest the proceeds at a better rate of interest. He delivered to Garth a letter from the Treasury Department in Washington stating that as the successor of Cochrane in the administration of Woodward's estate he had the power to transfer the bonds.

The German National Bank then forwarded the bonds to the Chemical National Bank of New York and that Bank had the bonds exchanged by the Treasury Department for new ones, it then sold the new bonds and remitted the proceeds to the German National Bank where they were credited to the individual account of Anderson and later paid out on his individual checks.

The banks were held liable in this case on the ground that the bonds, being payable to Cochrane as Executor showed on their face that they were subject to the trust created by the will of Woodward, and they were therefore put upon inquiry to ascertain what authority Anderson had to make the sale.

On this point the Court say:

"It was impossible to have read the bonds, however casually, without discovering that there was a trust of some character impressed upon them, which trust could be ascertained by reference to the will. They bore the unmistakable brands of the ownership of others, without the slightest evidence of claim of any character on the part of Anderson."

Charged as they were with the duty of making inquiry as to Anderson's authority to sell the bonds, the Court found that they had failed to exercise that precaution which the law imposed upon

them, and that they were liable for aiding Anderson in making the conversion of the bonds. The Court stated the rule to be as follows:

"The rule is, that if one acting as trustee convert the trust property without authority, he is to be held responsible, and he who purchased from him or aids him in the conversion, with a knowledge of the want of authority, or under circumstances that will reasonably put him upon inquiry as to the authority to make the sale or conversion is also liable. The numerous authorities cited agree to this as a rule."

In Perry on Trusts, Vol. 1, Sec. 225, it is said that "although such a description (as trustee), does not in itself create a trust, it is a warning to everyone who reads it; and that the same principle applies where instead of the word 'trustee' some other word is used to indicate a fiduciary capacity, e. g. guardian, agent, or attorney."

In Dollar Savings Bank & Trust Co. v. Crawford, 69 Va., 109, 70 S. E., 1089; 33 L. R. A. (N. S.), 587, it was held that the word "Trustee" after the name of the payee puts the purchaser upon notice as to the trustee's authority to sell and receive the proceeds; and this is the general rule as shown by all the cases above referred to.

We are of the opinion that the bond having been held by Mrs. Graper as guardian for the minor defendant, the bank was put on notice that a fiduciary relation existed between Mrs. Graper and the minor ward. In fact, the Bank inquired as to this irregularity, of the man Galloway, from whom it purchased the bond, and the bank accepted Galloway's statement that the bond was alright.

"One who has reasonable grounds for suspecting or inquiring ought to suspect, ought to inquire, and the law charges him with the knowledge which the proper inquiry would disclose. Actual notice may be proven by direct evidence, or it may be inferred or implied. Actual knowledge is not required. Actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstance from which a jury would have been warranted in inferring notice. If a person has knowledge of such facts as would lead a fair and prudent man, using ordinary thoughtfulness and care, to make further accessible inquiries, and he avoids the inquiry, he is chargeable with the knowledge which by ordinary diligence he would have acquired. Knowledge of facts, which to the mind of a man of ordinary prudence, beget inquiry, is actual notice; or, in other words, is the knowledge which a reasonable investigation would have revealed." Fidelity & Deposit Co. v. Queens Co. Trust Company, 226 N. Y., 233.

In Woodard v. Bird, 105 Tenn., 683, our Supreme Court, in speaking of dealing with a trustee or guardian, said:

"Such a transaction cannot be maintained on any sound principle, and its illegality affects both parties. She (the guardian) had no power to purchase this security, and Wisdom had no right to sell it to her. He knew he was dealing with a guardian who was thus using her ward's money in making an unlawful contract. His transfer to her was not as an individual, but, in her trust capacity. By its terms he admits that he was contracting with her as a trustee, and about the investment of funds belonging to her? He was in its strictest sense a transferee with notice, and being so, under an equitable rule of universal application, 'because himself a trustee for the original beneficiaries.' 2 Pomeroy Equity, Sec. 1048."

And with reference to the transaction involved in that case, the Court say:

"There is no pretense that it was ever submitted to or approved by the Court having jurisdiction of this guardian, an act made essential to a legal consummation. . . . If it had been submitted to a Court of equity beforehand, it would not have been authorized; and having been entered upon without prior authority, cannot be ratified."

We are of the opinion that defendant bank is not an innocent purchaser, that Mrs. Graper had no right to trade and traffic in her ward's property. She procured no approval of the Court to make the transfer to the Miller Company, and the bank received no higher or better title to the bond than Miller & Company had.

On the question of the minor having an equity in the apartment house owned by her mother, Mrs. Boyd, the pleadings in this case are not in such shape that the Court would be warranted in making any decree conveying the apartment house. The bonds that Mrs. Boyd or Mrs. Graper received from Miller & Company became worthless before she purchased the apartment house from Block & Goodman.

We are not passing on any rights or questions between the defendant bank and Mrs. Lena Graper or now Mrs. Lena Boyd. On the question of costs, this is a matter that is usually within the sound discretion of the Chancellor. However, we are of the opinion that the Chancellor should have ordered all the costs accrued in the lower Court paid out of the funds that had been paid into the registry of the Court by the complainant.

We are of the opinion that this bill of interpleader was properly filed, and both defendants made proper defenses to the bill. The Chancellor's decree will be modified to the extent of taxation of

costs of the lower Court, and the costs accrued in the lower Court will be paid out of the funds now in the hands of the Clerk and Master. The ninth assignment is sustained. All the other assignments are overruled. The judgment of the lower Court, with the exception of the taxation of costs, is affirmed. The cause will be remanded to the Chancery Court of Shelby County, for the purpose of collecting in the funds loaned out, paying out the balance to the proper party, and for such other orders as may be insisted.

Heiskell and Senter, JJ., concur.