FIDELITY & DEPOSIT CO. OF MARYLAND v. HAMILTON NAT. BANK et al.—126 S. W. (2d) 359.

Eastern Section. Nov. 3, 1938.

Petition for Certiorari Denied by Supreme Court, March 4, 1939.

Cantrell, Meacham & Moon, of Chattanooga, for appellants.

Miller, Miller & Martin, of Chattanooga, for appellee.

McAMIS, J.   Hamilton National Bank and R. T. Wright have appealed from a decree rendered against them and in favor of the Fidelity and Deposit Company of Maryland, as assignee of the Volunteer State Life Insurance Company, representing the sum of $3,218.20 of the funds of Volunteer State Life Insurance Company misappropriated by its treasurer, Oscar Mather, and paid by said Mather to the Hamilton National Bank as collecting agent for Wright.

On January 27, 1930, the Hamilton National Bank held, as collecting agent for R. T. Wright, Mather's personal note amounting, with interest, to $3,218.20, secured by a series of collateral notes, forty-three in number, for $100 each, payable monthly, and secured by a second deed of trust upon real estate located in Hamilton County, Tennessee.   Mather was Treasurer of the Volunteer State Life Insurance Company in which capacity he bought and sold securities for it.

In December 1929, Mather sold through the Hamilton Securities Corporation bonds belonging to the Volunteer State Life Insurance Company for $13,501.32, for which the Securities Corporation issued its check payable to Oscar Mather, Trustee.   This check was endorsed by Mather first as Oscar Mather, Trustee, and then as O. Mather, Trustee, and deposited in the Hamilton National Bank to the account of O. Mather, Trustee.   On January 27, 1930, this account had been reduced by checks regularly drawn to a balance of $558.05. Again, on January 27, 1930, the Hamilton Securities Corporation sold for Mather additional bonds for $4,082.66 and the check therefor was, in like manner, endorsed and deposited in the Hamilton National Bank to the credit of O. Mather, Trustee.

On the same date, Mather presented his check, drawn upon said account, to the bank for the balance due upon his personal notes to Wright.   This check was drawn and signed by O. Mather, Trustee. The bank, without making any inquiry as to Mather's right to draw upon said account for the purpose of paying his personal obligations and without investigating the nature, purpose and true ownership of the funds deposited in the name Mather as Trustee, but without any actual knowledge that the funds so deposited were not, in fact, personal funds belonging to Mather, accepted the check and delivered the note, with collateral, to Mather.

Shortly thereafter it was discovered that Mather had defaulted in his accounts with the Volunteer State Life Insurance Company to the

extent of more than $70,000 and that the securities sold to the Hamilton Securities Corporation to which we have referred, the proceeds from the sale of which were deposited in the O. Mather, Trustee, account belonged to the Volunteer State Life Insurance Company, their abstraction representing a part of Mather's ·defalcations.

The Chancellor was of opinion that the use of the word "Trustee" was sufficient to put the Bank upon inquiry as to the trust character and true ownership of the funds carried in Mather's name as trustee; that Wright, having acted through the Bank as his agent, is chargeable with the Bank's neglect to make such inquiry, and that Wright should be held primarily liable for the Bank's participation in Mather's unauthorized misappropriation of funds. Accordingly, primary liability was adjudged against Wright, with secondary liability against the Bank. From this decree, as already indicated, both have appealed to this court.

The first and principal assignment is that the word, "Trustee" after the name of the depositor was mere surplusage, and did not fix either actual or constructive notice or knowledge upon the Bank that the funds received in payment of Mather's note were not his own. The third assignment, that the word "Trustee" did not place upon defendants the duty of making inquiry into the status of the fund or require them to scrutinize the application thereof, is related to the question raised by the first assignment of error and will be considered and disposed of along with it.

Unless relaxed by the cases of New York Life Insurance Co. v. Bank of Commerce & Trust Co., 172 Tenn., 226, 111 S. W. (2d), 371, 115 A. L. R., 643, and Moneypenny v. Third National Bank, 172 Tenn., 237, 111 S. W. (2d), 375, the rule in this State, at least, is that one who takes a paper from a trustee importing upon its face its fiduciary character is bound to inquire of the transferor the right to dispose of it. Alexander v. Alderson et al., 66 Tenn. (7 Baxt.), 403; Covington v. Anderson, 84 Tenn. (16 Lea), 310; Caulkins v. Gas-Light Co., 85 Tenn., 683, 684, 4 S. W., 287, 4 Am. St. Rep., 786; Ford v. H. C. .Brown & Co., 114 Tenn., 467, 88 S. W., 1036, 1 L. R. A. (N. S.), 188; United States Fidelity & Guaranty Co. v. People's Bank, 127 Tenn., 720, 157 S. W., 414; Central Bank & Trust Co. v. Cohn, 150 Tenn., 375, 264 S. W., 641; Freeman v. Citizens' Nat. Bank, 167 Tenn., 399, 70 S. W. (2d), 25; Barry v. Hensley, 170 Tenn., 598, 98 S. W. (2d), 102. Of the cases enumerated, Alexander v. Alderson et al., Ford v. H. C. Brown & Co., and Central Bank & Trust Co. v. Cohn, specifically deal with the notice conveyed by the use of the word "trustee." The cases of United States Fidelity & Guaranty Co. v. People's Bank, Freeman v. Citizens' Nat. Bank and Barry v. Hensley,·supra, involve the liability of depository banks for conversion by the trustee of trust deposits.

■ However, independent of this rule, it is held that if the trustee in fact has power to negotiate the paper, a purchaser in good faith will be protected, although the trustee used the money for his private purposes. Bank v. Looney, 99 Tenn., 278, 292, 42 S. W., 149, 38 L. R. A., 837, 63 Am. St. Rep., 830.

All of these cases, without exception, adhere strictly to the rule of constructive notice with the result that it has developed into a settled rule of law in this State. The courts elsewhere are in practical agreement. See annotations, 61 A. L. R., 1389.

The case of New York Life Insurance Co. v. Bank of Commerce & Trust Co., supra, relied upon by defendants as marking a departure from the rule as expounded and applied in the cases cited, did not involve the character of trusts under consideration in any of them. Noting that Tennessee is committed to the rule of liability, it was pointed out that, in all our cases following the rule, the liability of the depositing bank was for guardian, administrator or other trust funds. The case which the court had under consideration did not involve funds of that character but involved "privately formed business agency relationships." A purpose to distinguish such a relationship from trusts of the classes previously under consideration is manifest from the following language [172 Tenn., 226, 111 S. W. (2d), 374] :

"Without relaxation of the rule heretofore enforced in this state for the protection of beneficiaries, frequently minors and others not in position to protect themselves, charging depository banks with notice carrying liability for misuse of trust funds whenever a note or check is accepted by the bank which shows on its face that the funds of guardians, administrators, or other trustees are involved, the depository bank will not be held to know of the terms, or limitations, if any, placed by voluntary agreements between parties on chosen 'agents' or 'attorneys;' a classification in which the instant case falls. The rule of notice and consequent liability of bank depositories will not be extended to these personally selected and privately formed business agency relationships, beyond requiring indorsement by the true party named, unless the bank has otherwise actual notice of a fraudulent purpose, or a want of authority on the part of the payee, or participates in the misappropriation."

Likewise, in Moneypenny v. Third National Bank, supra, decided on the same day, the court, while recognizing the rule of liability as applied to trustees, guardians, executors, and administrators, declined to hold the depositing bank liable because it failed to make inquiry and learn of the undisclosed limitations upon the chairman of an unincorporated association in endorsing and cashing the check which carried upon its face the words "General Chairman" after the name of the payee.

It is insisted by counsel for defendants, that the effect of the court's holdings in the two cases mentioned was to limit the application of the rule of liability to trusteeships regulated by statute or by decrees of courts. The court referred to trusts regulated by statutes or decrees as falling within the class entitling the beneficiaries to invoke the rule but in the same paragraph (page 243, 111 S. W. (2d), page 377) the court cited the case of Ford v. H. C. Brown & Co., 114 Tenn., 467, 88 S. W., 1036, 1 L. R. A. (N. S.), 188, referred to above, and in that case the trust relationship was formed by contract and not by statute or by decree of court. There is nothing in the opinion to indicate an intention to overrule the holding in that case.

Under the authorities to which we have referred, the use of the word "trustee" was constructive notice to the bank sufficient to put it upon inquiry into the status of the fund against which the check was drawn and it results that the first and third assignments of error must be overruled.

By the second assignment of error it is insisted that the rule of liability will not be extended to privately selected and confidentially formed agency relationships in the absence of actual notice of fraudulent purpose, or of participation therein with knowledge. The cases of New York Life Insurance Co. v. Bank of Commerce & Trust Co., and Moneypenny v. Third National Bank, supra, are cited in support of this assignment. It is unnecessary to reiterate what has already been said with respect to these cases. It is sufficient to say, at this point, that the relationship which existed between Mather and the Volunteer State Life Insurance Company in depositing these funds in his name as trustee, so far as appears, was not contractual but without the knowledge or consent of the latter. The second assignment of error is, accordingly, overruled.

We find without merit the specific defenses (1) that the relation of debtor and creditor existed between the Bank and Mather requiring the Bank to honor all checks properly drawn in the name of the depositor, (2) that the Bank should not be held liable because no consideration passed to it and that Wright had no notice, either actual or constructive, that trust funds were involved in the payment of his note, and (3) that, under Section 56 of the Uniform Negotiable Instruments Act (Code Section 7380), the Bank had no notice of any infirmity in the instrument or defect in the title of Mather and, hence, is an innocent purchaser for value without notice.

The defendant Bank cannot escape liability because obligated by the depository contract to honor checks properly drawn in the name of the depositor for two reasons. In the first place, as we have seen, the Bank was charged with notice that Mather was acting merely in the capacity of Trustee and that he was not the real party in interest. In applying these funds to the payment of his own personal

obligation, a fact known to the Bank, he was not acting for the Bank's real depositor and the Bank breached its implied contract with the true owner of the funds to pay them out only upon checks drawn by such owner or by another duly authorized to act for it and, having knowledge or notice of an unauthorized conversion of the funds by the Trustee, it was the Bank's duty to refuse to honor the check.

In the second place, when the Bank accepted Mather's check it was not acting in the capacity of a depository of funds but in the capacity of collecting agent for Wright. If the check had been drawn upon another bank by Mather as Trustee the result would not have been different.

We have been cited to no case holding that a depository bank may escape liability for a conversion by the trustee where, as here, it has notice of the attempted conversion and participates in it by accepting trust funds in payment of the personal obligation of the trustee. In neither of the cases, cited supra, United States Fidelity & Guaranty Co. v. People's Bank and Barry v. Hensley, did the bank actually participate in the act of conversion. In both cases the bank merely acquiesced in the conversion, yet was held liable to the cestui que trust.

The general rule of liability of an agent illegally demanding or receiving money from another accords with this view. We quote from 3 Corpus Juris Secundum, Agency, section 221, p. 132, under the heading of Conversion:

"In accordance with the rule that an agent is liable for injury resulting from his misfeasance or malfeasance, as stated in Section 221 above, an agent who wrongfully converts another's property, or who assists his principal in so doing, is personally liable for the conversion, even though he committed the act in good faith, in ignorance of the owner's rights and in obedience to the command of his principal, and although he himself realized nothing out of the transaction. A fortiori, if he knowingly assists his principal in converting another's property, he is liable." And see Section 219, page 129 under the heading "Money Illegally Received."

With respect to Wright, clearly the Bank acted as his agent, and directly within the scope of its agency, in collecting the note. Bridgeman v. McCloud et al., 12 Tenn. App., 47; 9 C. J. S., Banks and Banking, p. 466, section 218. And see Farmers' & Merchants' Bank v. State, 186 Ark., 994, 23 S. W. (2d) 624, 627, where the facts were strikingly analogous to the case at bar, and wherein the court said:

"The appellant bank, in accepting the check drawn in its favor by the county treasurer on county funds, and in making the collection from the drawee bank, was acting within the line of its duty and the scope of its powers as agent for M. H. Goodwin (3 R. C. L., 634),

and he therefore was affected with notice of all that the agent knew or should have known (Bank of Hoxie v. Meriwether, 166 Ark., 39, 265 S. W., 642).''

An anomalous situation, the injustice of which is at once apparent, would result if the Bank be held not liable because it acted as agent and received none of the funds in its own right and Wright be held not liable because he had no actual knowledge of the use of trust funds. Neither logic nor reason permits a principal to escape liability for an act done through the medium of an agent which, if done by the principal, would have resulted in liability and, likewise, the agent cannot escape the consequences of an illegal and unauthorized invasion of the right of third persons merely upon the ground that it acted for its principal.

The defense that defendants acquired Mather's checks without notice, as defined by Section 56 of the Uniform Negotiable Instruments Act is the same as that made in Ford v. H. C. Brown & Co., 114 Tenn., 467, 88 S. W., 1036, 1 L. R. A. (N. S.), 188, cited supra, in which the court held this section of the Act inapplicable. Later cases on this subject include Union Nat. Bank v. Bluff City Bank, 152 Tenn., 486, 279 S. W., 797, and Stansbury v. Bank of Amory, 13 Tenn. App., 673.

Finally it is insisted in behalf of defendants that complainant should be held estopped because its assignor, Volunteer State Life Insurance Company, after discovering Mather's defalcations, accepted a deed from the owner of the property which stood as security for the second mortgage notes pledged by Mather to Wright. The Chancellor decreed that defendants should be entitled to a credit for the value of any equity in said property and ordered a reference to determine its value. The Master found that the property was not worth more than the amount of the first mortgage and, upon this finding, concurred in by the Chancellor, complainant was held not estopped and awarded a recovery for the full amount of the check, with interest from the filing of the bill. Under this finding, it would appear that defendants have not been injured as a result of this attempt upon the part of the Volunteer State Life Insurance Company to salvage as much as possible of its loss. Had it been successful, its efforts would have enured to the benefit of defendants and it does not appear that defendant, had they been notified of this action, could have done more than was done in an effort to realize something from the property.

Without reviewing the facts in detail, we find that the right of action here asserted has been duly assigned to complainant and was owned by complainant at the time of the institution of this suit and the defense that complainant is not the owner of the right of action here asserted is found without merit. Finding no error

in the decree of the Chancellor, it is affirmed with costs for which decree may be entered.

Portrum and Ailor, JJ., concur.