**4**

Kimberly CARTER, Plaintiff-Appellant,

v.

**BAKER'S FOOD RITE STORE** and
James Carpenter,
Defendants–Appellees.

Court of Appeals of Tennessee,
Western Section,
at Jackson.

Oct. 26, 1989.

Application for Permission to Appeal
Denied by Supreme Court
Jan. 29, 1990.

James K. Hodges, Jr., Memphis for plaintiff-appellant.

Gary K. Smith and Roane Waring, III, Memphis, for defendants-appellees.

CRAWFORD, Judge.

This is a malicious prosecution case. Plaintiff, Kimberly Carter, sued Baker's Food Rite Store and its manager, James Carpenter, and at the conclusion of plaintiff's proof,[1] the trial court directed a verdict for defendants. Plaintiff appeals and the only issue for review is whether the trial court erred in directing a verdict.

The complaint alleges that on October 19, 1985, plaintiff contacted her employer, Memphis Light, Gas & Water, and asked them to stop payment on her payroll check because it had been stolen. MLG & W did order a stop payment on this check. The complaint avers that on November 25, 1985, James Carpenter, on behalf of Baker's Food Rite, swore out a warrant for the arrest of Kimberly Carter on the offense of obtaining money by false pretenses. Plaintiff further alleges that her husband, Larry Carter, confessed to stealing the payroll check, forging plaintiff's signature, and cashing the check at Baker's Food Rite. Plaintiff avers that the check was cashed without her knowledge or consent and that she did not receive any of the proceeds therefrom. The complaint further states that on June 9, 1986, the case was disposed of by the Attorney General before the Grand Jury.

Defendants' answer admits that plaintiff stopped payment on the check, but denies that she reported to the police that the check was stolen. The answer denies the other material allegations of the complaint and joins issue thereon. Defendants affirmatively averred that plaintiff cashed the check and later stopped payment on same.

The record reveals the following proof pertinent to the issue before the court:

Plaintiff's Testimony:

Prior to and on October 19, 1985, plaintiff and her husband, Larry, were having marital difficulties because of his alcohol and drug addiction. They were in the process of separating, although plaintiff was about three months pregnant. On Friday night, October 18, 1985, plaintiff allowed Larry to stay in her apartment on the couch. When plaintiff awoke the next morning, she discovered that her paycheck from MLG & W together with her I.D. card and car keys were gone. She called the police shortly thereafter and when they arrived at her apartment she told them that her husband had stolen her paycheck. She also called her boss, Bobby Blancett, and told him that the check was stolen and he placed a stop payment order on the check on the following Monday morning.

Defendant Carpenter called her later that week and she told him that the check had been stolen and gave him the name of her attorney, Marvin Bienvenu. On advice of her attorney, she refused to give Carpenter her address at home. Although requested by Carpenter, she did not visit the store to inspect the check, nor did she tell Carpenter that her husband, Larry Carter, had stolen her check. She never cashed her paychecks at the store, and, although she has a check cashing card there, it is in the name of Kimberly A. Haulum. Plaintiff was born on September 20, 1961, and at the time of the event in question she was 24 years of age. At that time, her pregnancy was showing. She weighed between 105 and 112 pounds, was 5'3" tall.

---

1. Plaintiff's proof included the testimony of defendant Carpenter and the cashier Wilburn.

**Lieutenant Ray Turner:**

Lt. Turner, the custodian of records for the Memphis Police Department, testified that the police department records show that two cars went to plaintiff's home the morning of October 19, 1985, but the record did not indicate the call was for theft investigation.

**Larry Wayne Carter:**

Mr. Carter was plaintiff's husband at the time of the incident in question. He stated that he had indeed stolen her paycheck and cashed it at Baker's Food Rite after having forged her signature as an endorsement.

**Defendant James Carpenter:**

Mr. Carpenter, the manager of Baker's Food Rite, stated that for the convenience of customers, checks are often cashed without inspection of the check cashing card if the customer's appearance does not raise any suspicion. This judgment call is left up to the cashier, even when that cashier is new to the store as was Perry Wilburn, the cashier who cashed the check in question. Wilburn had been employed about three or four days at the time the check was cashed.

After the check was returned with payment stopped, he called Ms. Carter and asked her about the check. She told him that the check had been stolen out of her purse when her apartment was broken into. She said the door to her apartment had been broken in and that she was not home at the time it happened. She refused to give him her address. She appeared "very nervous, very hesitant to talk at all." He asked her to identify the signature, but she never came into the store. He called the police, but was not able to verify any break-in report. As part of his investigation, he performed a mock photo line up in which he presented Perry Wilburn, the cashier who cashed the check, with six Regiscope photographs of white women. Wilburn identified the photograph of plaintiff as being the woman who presented the check. He admitted that the description of plaintiff in the warrant (30 years old, 5'9" tall, and weighing 125 pounds) was erroneous.

**Perry Wilburn:**

Mr. Wilburn, the clerk who cashed the check, testified that a woman cashed the check. He did not look at the check cashing card, but if the check had been presented by a man, he would have looked at it. He did not notice plaintiff wearing maternity clothes, because he "did not look that close at her." He testified that he would cash any MLG & W check with a three or four digit check cashing number written on the check if they "looked okay." He remembered cashing this particular check because the person who presented it to him reminded him of someone he used to date.

The sole issue presented for review is: Whether the trial court erred in directing a verdict for defendants.

■ In an action for malicious prosecution, the plaintiff must establish that a criminal proceeding was instituted by the defendants against the plaintiff, that such proceeding terminated in favor of the accused, that there was an absence of probable cause, and that there was malice or a primary purpose other than that of bringing the offender to justice. *Sullivan v. Young*, 678 S.W.2d 906, 911 (Tenn.App. 1984).

■ Probable cause is the linchpin of malicious prosecution. *Kerney v. Aetna Casualty and Surety Company*, 648 S.W.2d 247, 251 (Tenn.App.1982). The issue of whether there was probable cause for commencement of prosecution turns on whether good and reasonable grounds existed for the prosecutor to believe that the accused was really guilty. *Sullivan v. Young*, 678 S.W.2d at 912. Probable cause has been defined by Tennessee courts as "the existence of such facts and circumstances as would excite in a reasonable mind the belief that the person charged was guilty of the crime for which he was prosecuted." *Smith v. Harford*, 751 S.W.2d 140, 143 (Tenn.App.1987); citing *Poster v. Andrews*, 183 Tenn. 544, 194 S.W.2d 337, 341 (1946). Probable cause signifies simply that the prosecutor had a good faith belief, based on the facts and circumstances known at the time, that the accused was guilty of the offense charged.

*Brown v. SCOA Industries, Inc.*, 741 S.W.2d 916, 919 (Tenn.App.1987). The conduct of the prosecutor is to be weighed in view of what appeared to him at the time of instituting the prior proceeding, not in light of subsequently appearing facts. *Smith v. Harford*, 751 S.W.2d at 143. In *Landers v. Kroger Co.*, 539 S.W.2d 130, 132 (Tenn.App.1976), the court said:

"Definitions of probable cause, however differently expressed, all agree in these two essentials: (1) The prosecutor must in good faith have honestly believed the accused was guilty of the crime charged; and (2) his belief must have been reasonable—based on facts and circumstances sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged. The prosecutor must have made the investigation an ordinarily prudent person would have made in the circumstances." *Thompson v. Schulz*, 34 Tenn.App. 488, 240 S.W.2d 252 (Tenn.App.1940).

■ The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it are true and existed is a question of fact for the jury. Whether the facts found to be true constitute probable cause is a question of law for the court. *Logan v. Kuhn's Big K Corp.*, 676 S.W.2d 948, 952 (Tenn.1984) citing *Lewis v. Williams*, 618 S.W.2d 299, 300–301 (Tenn.1981). *See also Kerney v. Aetna Casualty and Surety Company*, 648 S.W.2d 247, 252 (Tenn.App.1982); *Cohen v. Cook*, 224 Tenn. 729, 462 S.W.2d 499, 500 (1969); *Evans v. Perkey*, 647 S.W.2d 636, 642 (Tenn.App.1982); *Landers v. Kroger Co.*, 539 S.W.2d 130, 132 (Tenn. App.1976).

Motions for directed verdicts in malicious prosecution cases are treated much the same as in other cases. As stated in *Brown v. SCOA Industries, Inc.*, 741 S.W.2d 916, 919 (Tenn.App.1987):

Directed verdicts are appropriate only when reasonable minds, after reviewing the evidence, could reach only one conclusion. *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn.1977). Thus, when an appellate court is considering whether a trial court should have granted a directed verdict, it should take the strongest legitimate view of the evidence in favor of the [petitioning] party, allow all reasonable inferences favorable to that party, and disregard the evidence to the contrary. *Gann v. Int'l Harvester Company of Canada*, 712 S.W.2d 100, 105 (Tenn. 1986); *Sauls v. Evans*, 635 S.W.2d 377, 379 (Tenn.1982); *Potter v. Tucker*, 688 S.W.2d 833, 835 (Tenn.App.1985).

■ In the case before us, defendants assert that plaintiff failed to prove a lack of probable cause and that therefore the trial court properly directed a verdict. We must respectfully disagree.

The undisputed facts are that plaintiff was issued a payroll check by her employer which was cashed by defendant Baker's Food Rite Store. Subsequent to the cashing of the check, payment was stopped by the drawer, plaintiff's employer.

The disputed facts are that plaintiff stated that the check was stolen by her husband and that he, without her knowledge or consent, cashed the check and kept the proceeds. Defendant's employee, Wilburn, stated that a woman cashed the check and that he identified this woman as the plaintiff. Plaintiff's former husband said that he cashed the check and kept the proceeds. Thus, there is a very sharp dispute as to who cashed the check. Is this a dispute of a material fact? We think it is.

■ It is clearly established that Wilburn is an employee of defendants and was acting within the scope of his employment and in furtherance of his employer's business at all material times. The master is responsible for the acts of his servant in the general scope of his employment while engaged in the master's business and done with a view to furtherance of that business and as an incident to his employment. *Sullivan v. Morrow*, 504 S.W.2d 767, 772 (Tenn.App.1973). Generally, a principal is chargeable with and is bound by the knowledge of or a notice to his agent, received while the agent is acting within the scope of his authority and which is in reference to a matter over which his authority extends. *Williams v. Title Guar. & Trust*

*Co.*, 31 Tenn.App. 128, 138, 212 S.W.2d 897, 901 (1948).

There is testimony in this record to the effect that Wilburn, acting as the agent and servant of the defendants, cashed the check in question for a man, namely, Larry Carter, on an endorsement in the name of Kimberly Carter. The act of Wilburn is the act of defendants. Thus, if the jury could find that the defendant cashed the check for a man and caused a criminal complaint to be filed against a woman for the cashing of the check, there would be no probable cause existing, absent other persuasive evidence to the contrary. In *Fidelity & Deposit Co. v. Hamilton Nat'l Bank*, 23 Tenn.App. 20, 126 S.W.2d 359 (1938), the Eastern Section of this Court said:

> Neither logic nor reason permits a principal to escape liability for an act done through the medium of an agent which, if done by the principal, would have resulted in liability ...

*Id.* at 28, 126 S.W.2d at 364.

█ Defendants next assert that plaintiff did not prove malice, which is an essential element in a malicious prosecution case. We agree that malice is an essential element in this cause of action; however, malice may be inferred from the fact that a criminal prosecution was brought without probable cause. *Lewis v. Williams*, 618 S.W.2d 299, 303 (Tenn.1981). "The inference is not one of law but is a presumption of fact which may be rebutted, thus making malice an issue to be decided by the jury where a criminal prosecution is instituted without probable cause." 618 S.W.2d at 303. Thus, if the trial court should determine that probable cause existed after a resolution of the disputed issues concerning the circumstances of the case, malice would be a question of fact for the jury.

Finally, defendants argue that they should be relieved of responsibility because they relied upon the advice of counsel. In *Peoples Protective Life Ins. Co. v. Neuhoff*, 56 Tenn.App. 346, 407 S.W.2d 190 (Tenn.App.1966), the Court said:

> With respect to the defense of advice of counsel, in *Cooper v. Flemming*, 114 Tenn. 40, 84 S.W. 801, 68 L.R.A. 849, it was held that where the advice of counsel has been honestly sought on all the material facts relating to the case, ascertainable by the exercise of due diligence, and a prosecution is commenced in pursuance of such advice, the prosecutor is entitled, as a matter of law, to immunity from damages as for malicious prosecution. And in this case it was also held that the District Attorney General is counsel whose advice can constitute a defense to an action for malicious prosecution, where based upon a full and honest presentation of the material, ascertainable facts.
>
> This is in accord with Prosser, Law of Torts, § 98, p. 655, "Prosecuting attorneys ... are at least as well qualified to give advice on criminal proceedings as any others, and it is agreed everywhere that their advice is sufficient to establish probable cause."

56 Tenn.App. at 366, 407 S.W.2d at 199–200.

█ It is clear that in order to prevail on this defense, all the material facts must be related to the counsel. In the instant case, plaintiff contends and introduced proof to the effect that defendants had knowledge that a "man" cashed the check, but the affidavit of complaint states that a "female white" cashed the check. Thus, if the jury determines that the true fact is as contended by plaintiff, the defendants did not make a full disclosure of all material facts, and this defense is not viable.

Under the facts of this case, there are disputed issues of material fact which must be resolved by the jury to establish the circumstances upon which the Court must rule as to the existence of probable cause.

Accordingly, the judgment of the trial court is vacated, and this case is remanded for a new trial. Costs of appeal are assessed against appellees.

HIGHERS and FARMER, JJ., concur.

### ORDER

This cause came on to be regularly considered by the Court on the record and for

the reasons stated in the Court's Opinion, of even date, it is Ordered that:

1. The judgment of the trial court is vacated, and this case is remanded for a new trial.

2. Costs of the appeal are assessed against appellees for which execution may issue, if necessary.