George Randy LOGAN, Plaintiff-Appellee,

v.

KUHN'S BIG K CORPORATION, Jo Ann Ross and Ann Patrick, Defendants-Appellants.

Supreme Court of Tennessee, at Nashville.

Sept. 17, 1984.

Hugh C. Howser, Nashville, for plaintiff-appellee.

William Cragg, Nashville, for defendants-appellants.

## OPINION

BROCK, Justice.

In this action for damages for malicious prosecution the trial judge at the conclusion of all the evidence directed a verdict for the defendants. The plaintiff appealed to the Court of Appeals which reversed the judgment of the trial court and remanded

for a new trial. We granted discretionary review.

The pertinent facts in this case have been stated by the Court of Appeals:

"On December 20, 1980, Mr. Logan, age 25, entered the Big K store to Christmas shop, having that same day previously been to Circuit City and Service Merchandise without incident. He had with him two small bags stapled shut containing items previously purchased. Not seeing any carts, he asked for and obtained from a cashier a paper sack into which he placed his proposed purchases. Mr. Logan's recollection is that upon asking for the bag he might have told the cashier he intended to place therein the items for which he was shopping from a previously prepared list. Ms. Ross, the customer service manager at the store, saw Mr. Logan receive the sack and watched as he went into the health and beauty aids section and selected several items which he placed therein. Ms. Ross sent for Ms. Patrick, the store security officer, pointed Mr. Logan out to her and Ms. Patrick continued to observe plaintiff's activities for another 20 minutes. During that time Ms. Patrick saw him twice place items into the sack in a fashion 'suspicious' to her. Defendants' proof was that when plaintiff would select an item he would look both ways, kneel and place it in and tightly close the sack. Mr. Logan testified that 'maybe' the sack was closed after merchandise selection, but that he did nothing unusual in placing items in the bag. Though defendants' proof was that plaintiff was heading for the exit, according to Mr. Logan he was still in the aisle shopping and had not gone toward the door nor was he anywhere close thereto when he was initially detained and questioned by Ms. Patrick in the store offices.

"After apprehension Mr. Logan provided Ms. Patrick with identification, advised her that he had money to pay for the items, some deodorant and chewing gum, and said he never intended to leave the store without paying for them. Mr. Lo-

gan at the time was employed. When questioned about his use of the sack, Mr. Logan explained that he did his shopping that way. When Ms. Patrick asked him why he didn't use a cart he told her that he had not seen any carts when he entered the store. Plaintiff's proof was that the carts were difficult to see.

"The police were summoned. Mr. Logan reiterated to the authorities that he intended to pay for the merchandise. He was frisked and his pockets emptied. Plaintiff was given a citation for shoplifting and released. During the process he informed the police and Ms. Patrick that he was on medication, but after finding a bottle containing Anacin, they did not pursue that matter any further even though Ms. Patrick testified that during the interrogation in the office Randy appeared to be very sleepy and seemed to be blocking out everything that was happening. Plaintiff suffers from brain damage causing both low measurable intelligence and emotional problems. Mr. Logan has received psychiatric care and has required long term hospitalization and treatment with anti-psychotic and anti-depressant drugs.

"On the following day Mr. Logan returned to Big K with his parents, Mr. & Mrs. George V. Logan, who were very upset. Plaintiff indicated to his parents where he was standing when Ms. Patrick detained him and pointed out Ms. Patrick is the one who had made the apprehension. Plaintiff's father discussed the arrest with Ms. Patrick and other store personnel. At this time the senior Mr. Logan informed them all of plaintiff's mental problems and discouraged further prosecution.

"Kuhn's Big K proceeded with the prosecution, and on February 4, 1981, in the General Sessions Court of Davidson County, the charges were dismissed against Mr. Logan."

The offense with which the plaintiff was charged by the defendants is defined in T.C.A., § 39–3–1124, as follows:

"Shoplifting—(a) Any person who shall willfully take possession of any goods, wares or merchandise not exceeding the value of one hundred dollars ($100) offered for sale by any store or other mercantile establishment with the intention of converting the same to his own use without paying the purchase price thereof, shall be guilty of the offense of shoplifting and shall be punished by a fine of not more than three hundred dollars ($300) or imprisonment for not more than six (6) months, or both."

T.C.A., § 39–3–1124, is augmented and clarified by T.C.A., § 39–3–1125, which provides as follows:

"Concealment of unpurchased goods.— (a) Any person willfully concealing unpurchased goods or merchandise of any store or other mercantile establishment either on the premises or outside the premises of such store, shall be prima facie presumed to have so concealed such article with the intention of converting the same to his own use without paying the purchase price thereof within the meaning of § 39–3–1124, and the finding of such unpurchased goods or merchandise concealed upon such person or among the belongings of such person shall be prima facie evidence of willful concealment, and if such person conceals, or causes to be concealed, such unpurchased goods or merchandise upon the person or among the belongings of another, the finding of the same, shall be prima facie evidence of willful concealment on the part of the person so concealing such goods."

The trial judge cited the last quoted statute in directing a verdict for the defendants, finding that as a matter of law the plaintiff had concealed articles of the defendants' goods within the meaning of T.C.A., § 39–3–1125, and, therefore, that the evidence showed, as a matter of law, that defendants acted with probable cause in procuring the plaintiff's arrest and prosecution.

The Court of Appeals disagreed with that conclusion of the trial judge and, ac-

cordingly, reversed the judgment of the trial court and remanded for a new trial. We agree with that disposition of the case by the Court of Appeals but granted review to consider questions raised by the opinion of the Court of Appeals.

■ In its opinion in this case the Court of Appeals expressed its disapproval of the opinion of this Court in *Lewis v. Williams,* Tenn., 618 S.W.2d 299 (1981), Justice Drowota dissenting. However, we continue to adhere to the views expressed by Mr. Justice Cooper, writing for the Court, in *Lewis v. Williams, supra.* Thus, we reiterate:

" 'Definitions of probable cause, however differently expressed, all agree in these two essentials: (1) The prosecutor must in good faith have honestly believed the accused was guilty of the crime charged; and (2) his belief must have been reasonable—based on facts and circumstances sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged. The prosecutor must have made the investigation an ordinarily prudent person would have made in the circumstances.' " 618 S.W.2d at 302.

■ Likewise, we reaffirm the following statements from the *Lewis v. Williams* opinion, to wit:

"We granted defendants' application for permission to appeal to reiterate the statement of principle set forth in *Cohen v. Cook, supra* (224 Tenn. 729, 462 S.W.2d 499 [1970]), and to determine whether the submission of the issue of probable cause to the jury without qualifying instructions, being error, was prejudicial error requiring a reversal of the judgment. The resolution of the latter issue is dependent on whether the evidence germane to the issue of probable cause was disputed and, if not, whether the evidence established an absence of probable cause. We are also faced with the question of whether there is material evidence to support the jury's finding of malice.

"*Cohen* was a malicious prosecution case in which the issue of probable cause was presented to the jury. The Court of Appeals approved this action. *See Cohen v. Cook,* 62 Tenn.App. 292, 462 S.W.2d 502 [1969]. The petition for certiorari to the Court of Appeals was denied initially; however, on receiving a petition to rehear, certiorari was granted to consider whether or not the trial judge erred in permitting the jury to determine the issue of probable cause. The court concluded that it was error, but pointed out that the error had been waived by the defendant's failure to raise the issue in its motion for new trial and affirmed the judgment entered in the Court of Appeals.

"On the issue of probable cause, the court had the following to say:

'In a malicious prosecution action the determination from the evidence of the existence or lack of existence of probable cause is a question of law for the court and it is error to submit this issue to the jury. In cases where the evidence upon which this issue is to be determined is admitted or undisputed and only one inference can be drawn therefrom the matter presents no great difficulty for the trial judge. In cases where the evidence on this issue is conflicting, such does present to the trial judge a difficult duty as it involves instructing juries on a mixed question of law and fact; but difficult or not, where the evidence is conflicting on this issue it still remains the province of the trial judge as a matter of law to determine the existence or lack of existence of probable cause.

'Where the evidence determining the existence or lack of existence of probable cause is conflicting, there are two methods open to the trial judge. First, the trial judge can submit such special questions to the jury requiring the jury to determine whether certain facts are or are not established by the evidence, and then based upon this determination made by the jury the trial judge, as a matter of law, determines the existence or lack of existence of proba-

ble cause. Secondly, the trial judge can state hypothetically the facts relied upon by both the plaintiff and defendant on the issue or probable cause, instructing the jury if it finds the facts relied upon by the plaintiff to be established by the evidence, then as a matter of law there was a lack of probable cause for the prosecution of the action upon which the malicious prosecution action is founded; but if it finds the facts relied upon by the defendant established by the evidence then as a matter of law there was · probable cause for the prosecution of the action upon which the malicious prosecution action is founded.' 462 S.W.2d at 500. "The genesis of this rule is in the early Tennessee cases of. *Kelton v. Bevins*, 3 Tenn. 90 (1812) and *Memphis Gayoso Gas Co. v. Williamson*, 56 Tenn. 314 (1872). Together, the holdings in these cases are encompassed in the principles set forth in the *Cohen* case as decided by this court. A long line of cases since *Memphis Gayoso* has approved this rule, more commonly using language such as that cited in *Klein v. Elliott*, 59 Tenn. App. 1, 436 S.W.2d 867 (1968):

'The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it are true and existed is a question of fact for the jury. Whether the facts found to be true constitute probable cause is a question of law for the court.' " *Lewis v. Williams* at 300–01.

In conducting further proceedings in the instant case and in other malicious prosecution cases the courts of this state should apply the teachings of *Lewis v. Williams, supra.*

■ It is our opinion that, viewing the evidence most favorably to the plaintiff, as we are required to do in determining a motion for directed verdict, it was error for the trial court to direct a verdict for defendants in this case. Thus, defendants assert that the plaintiff was heading · for the exit when he was apprehended but the plaintiff's insistence is that he was still in the aisle shopping and had not gone toward

the door nor was he anywhere close thereto when he was apprehended. This constitutes an important dispute in the evidence bearing upon the question of the plaintiff's criminal intent and upon the issue of probable cause; it is an issue which should have been determined by the jury. Also pertinent to these issues was the fact that the sack into which the plaintiff placed his proposed purchases of deodorant and chewing gum had been supplied to him by the defendant's employee upon plaintiff's entry to the store. Moreover, it appears that the trial judge placed undue emphasis upon the fact that the plaintiff placed proposed purchases into the sack supplied to him by the defendant. Thus, in explaining his directed verdict to the jury, the trial judge stated:

"Under this act ... the action of putting unpurchased goods in a concealed place, in a sack, is a presumption of stealing. It doesn't matter whether that should be done in the aisles or on the way to the door. That's probable cause for an arrest for shoplifting, regardless of whether the person is innocent or not."

Again, the trial judge stated:

"... When a person does take merchandise off a shelf and places it in a sack where it cannot be seen and would be invisible, it is reason to think that he intends to take it out of the store without paying for it."

It must be remembered that the type of concealment which creates a presumption of criminal intent under the provisions of T.C.A., § 39–3–1125, is *willful* concealment of unpurchased goods. We agree with the following observation of the Court of Appeals:

"Though the contents of the sack were technically withdrawn from observation there is no way we can say as a matter of law that they were hidden, secreted or withheld from the knowledge of others. Under these facts we are equally unable to say as a matter of law that just because these goods were in the exposed sack that there was a 'concealment' of merchandise 'upon the person or among the belongings of another' so as to withdraw the case from the jury. We believe a jury ... might reasonably determine

that the plaintiff, using the sack in lieu of a basket to shop, closed same for purposes other than concealment—especially since the sack was itself acquired from Big K—and that the arrest and prosecution of Mr. Logan was precipitous and without cause.

"To hold as a matter of law under these facts viewed most favorably to plaintiff that there had been a concealment would be to suggest that storekeepers may invoke the protection of T.C.A., § 39-3-1125, *supra,* everytime an item of merchandise is hidden from view of the merchant when a customer is in a store. Under this rationale if any items in a shopping basket were blocked from human vision a shopper would be at the storekeeper's mercy. The same would be true everytime a customer sacked produce in the grocery store. Surely this was not the intention of the legislature."

■ In our opinion this question, whether the concealment in this case was *willful,* that is, purposeful and deliberate, or whether it was merely inadvertent and heedless, is properly a question for the jury, to be determined from their consideration of all the relevant evidence.

The Court of Appeals was correct in holding that the trial court erred in permitting the magistrate in the criminal proceeding to testify in this case, recounting his reasons for dismissing the shoplifting charge against the plaintiff.

The judgment of the Court of Appeals reversing the judgment of the trial court is affirmed and this cause is remanded to the trial court for a new trial consistent with this opinion. Costs incurred upon appeal are taxed against the defendants-appellants.

FONES and HARBISON, JJ., and HUMPHREYS, Special Justice, concur.

DROWOTA, J., filing separate opinion concurring in part; dissenting in part.

DROWOTA, Justice, concurring in part; dissenting in part.

I concur with the majority opinion that "it was error for the trial court to direct a verdict for Defendant in this case."

With respect to the issue of whether it is for the trial judge or the jury to determine the issue of probable cause in a malicious prosecution case, I must again disagree with the majority's conclusion that it is for the Court. I adhere to my views expressed in my dissenting opinion in *Lewis v. Williams,* 618 S.W.2d 299 (Tenn.1981), when I stated:

In my judgment, the question of probable cause should be for the jury .... the heart of the inquiry as to whether or not probable cause exists is reasonableness. The crucial question is whether the defendant was reasonable in his belief that the accused committed the crime. Inextricably bound up with that question is the reasonableness of the defendants' examination of the situation.... I find the procedure outlined in *Cohen v. Cook,* cumbersome, unnecessary, and extremely difficult for judge and jury. The better procedure would be to let the jury decide whether the instigator of criminal proceedings acted reasonably and avoid the difficulties presented by the majority's approach.... I see no good reason to take the issue of probable cause away from the jury and yet require the jury to determine malice and punitive damages.

618 S.W.2d at 304, 305.