791 F.2d 934
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
THOMAS R. PERSINGER, Plaintiff-Appellee,
v.
DOUG McKENZIE (85-5034) ROBERT A. WEBB (85-5064),
Defendants-Appellants.
 85-5034, 85-5064
 United States Court of Appeals, Sixth Circuit.
 4/11/86
 
 AFFIRMED
 E.D.Tenn.
 On Appeal from the United States District Court for the Eastern District of Tennessee
 BEFORE: KEITH and MARTIN, Circuit Judges and SPIEGEL*, District Judge.
 PER CURIAM:
 
 
 1
 Doug McKenzie and Robert Webb, the defendants in this civil rights action, appeal from a district court judgment entered upon an adverse jury verdict awarding plaintiff Thomas Persinger compensatory and punitive damages. The complaint, filed by plaintiff on January 27, 1984, alleged that the defendants falsely arrested and imprisoned plaintiff; used excessive force during the arrest and maliciously prosecuted him. Plaintiff alleged that these actions by the defendants abrogated his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. Sec. 1983 (1984). On appeal defendants contend the district court erred in denying their motions for directed verdict and judgment j. n.o.v., and in refusing to grant a remittitur on the damages award. We affirm the district court judgment.
 
 
 2
 The facts in this case were hotly disputed but on appeal must be viewed most favorably to plaintiff. Gootee v. Colt Industries, Inc., 712 F.2d 1057, 1062 (6th Cir. 1983). Plaintiff is a former supervisor of the Tennessee Valley Authority Singleton Plant in Blount County, Tennessee. Defendant McKenzie is an officer of the Tennessee Wildlife Department and defendant Webb is a police deputy employed by the Blount County Sheriff's Department.
 
 
 3
 On January 28, 1983, defendant McKenzie and fellow wildlife officer M.C. Arnold entered the TVA Singleton Plant in order to question T.V.A. employee Ronald Bivens about illegal deer hunting. The wildlife officers drove an unmarked van onto the plant grounds without checking in to comply with admittance procedures posted on signs at the plant gates. The wildlife officers located Bivens and completed their questions to him about the deer. Thereafter, walking with his cane, plaintiff arrived to investigate the officers' unauthorized entrance onto the plant. Witnesses' accounts of the encounter at the plant differed markedly. Plaintiff and his employees testified that he asked the wildlife officers why they had entered the plant without registering and getting hardhats. According to plaintiff and his witnesses, defendant McKenzie belligerently responded that they were wildlife officers and would go where they pleased. McKenzie flashed a card at plaintiff but pocketed it before he could read it and wrote plaintiff's name on a pad. Plaintiff ordered the officers' names recorded and, despite McKenzie's vehement outburst, ordered his employees to move a truck behind the officers while he called security. Plaintiff called security from a phone in a nearby warehouse but told them to forget the investigation since he could see the officers leaving the plant in their truck. Plaintiff assumed the incident was over.
 
 
 4
 A short time later, plaintiff found the front gates of the plant blocked by Blount County Sheriff vehicles and wildlife officers. As plaintiff disembarked from his truck to inquire what was going on, defendant officer Webb announced, 'We are going to arrest you; you are not above the law.' Officer Webb and McKenzie dragged plaintiff from the truck and plaintiff fell to the ground. Plaintiff testified that due to prior injuries he cannot stand without support from his cane or other device. Officer Scott Helton handcuffed plaintiff on the ground and Webb, Arnold and McKenzie carried him face down by his limbs to a cruiser. Plaintiff yelled to an employee named Gardner to get help. Gardner yelled to the officers to be careful in handling plaintiff because he was crippled. Webb dropped plaintiff's leg and warned Gardner to keep his distance or also risk arrest. The officers dragged plaintiff to the police cruiser and 'pitched' him in.
 
 
 5
 Plaintiff testified that en route to the Blount County Jail the officers ignored his request for medical help which he needed because the pins holding his hip together had been jarred during the arrest. Once at the station, the officers had plaintiff photographed. While on an elevator with McKenzie, Arnold and Webb present, plaintiff was kneed or elbowed in the groin. Plaintiff testified that the blow forced him down and caused him to defecate in his pants. A second set of pictures were taken before plaintiff was taken to a hospital for examination after which he was transported back to jail. Up until this point, the officers had not informed plaintiff of his rights or the charges underlying his arrest. He was then charged with resiting, opposing, impeding, intimidating and interferring with a Tennessee Wildlife Officer in violation of T.C.A. Sec. 70-1-103(a) (1983). Plaintiff's son posted bond that afternoon and at 6:30 that evening took his father from the jail to the hospital where plaintiff stayed for ten days recovering from the injuries he received during the arrest.
 
 
 6
 In contrast, defendants McKenzie and Arnold essentially testified that plaintiff's belligerence, threats of arrest and orders to block their egress left them little option but to arrest him for interfering with a wildlife officer's duties. Defendant Webb testified he merely assisted in the arrest at the request of the wildlife officers and that plaintiff's injuries were due to his unreasonable and violent resistance.
 
 
 7
 Plaintiff returned to work but as a result of injuries received during the arrest he experienced such difficulty in walking that his orthopedic physician ordered him to stop working. In July 1983, a jury acquitted plaintiff on the charges of resisting, opposing, impeding, intimidating and interfering with Tennessee Wildlife officers. Thereafter, plaintiff filed this false arrest, excessive force, malicious prosecution action against the defendants.[1] At the close of all proof, the defendants moved for a directed verdict which the court granted to defendant Helton but denied to McKenzie and Webb. In November 1984, the jury returned an eighty-thousand dollar judgment in favor of plaintiff against McKenzie and Webb on the unlawful arrest, and excessive force claims and a five-thousand dollar judgment against McKenzie on plaintiff's malicious prosecution claim. The jury also awarded plaintiff four-thousand dollars in punitive damages against both defendants. The district court denied defendants' motions for judgment notwithstanding the verdict and entered judgment on the verdict.
 
 DISCUSSION
 
 8
 Our review of a decision granting or denying a motion for judgment n.o.v. is governed by the standard applied to decisions on directed verdicts. Woodruff v. Tomlin, 616 F.2d 924, 934 (6th Cir.), cert. denied, 449 U.S. 888 (1980). We must review the evidence and inferences therefrom in the light most favorable to the non-moving party and must grant judgment n.o.v. only if "the evidence is such that there can be but one reasonable conclusion as to the proper verdict". Id. (quoting Reeves v. Power Tools, Inc., 474 F.2d 375, 380 (6th Cir. 1973)). See also Coffy v. Multi-County Narcotics Bureau, 600 F.2d 570, 579 (6th Cir. 1979). We conclude the evidence presented at trial permitted more than one reasonable conclusion and that the district court did not reversibly err in submitting all issues to the jury.
 
 
 9
 Defendant McKenzie contends that since probable cause existed to arrest plaintiff for interfering with wildlife officers in the execution of their duties, the district court was required to direct a verdict on the issue of the legality of plaintiff's arrest. McKenzie also assigns reversible error to the district court's failure to determine whether probable cause existed. We agree that under Tennessee law a plaintiff alleging malicious prosecution must prove an absence of probable cause and that the court, not the jury, must determine the legal question of whether probable cause existed. Logan v. Kuhn's Big K. Corp., 676 S.W. 2d 948, 951-52 (Tenn. 1984) (quoting Lewis v. Williams, 618 S.W. 2d 299, 300-01 (Tenn. 1981)). However, where the defendant fails to object to a court submitting the issue of probable cause to the jury, the issue is considered waived on appeal and no reversible error can be found. Cohen v. Cook, 224 Tenn. 729, 462 S.W. 2d 499, 501-02 (1970). Defendant did not raise the court's error of submitting probable cause to the jury in any post verdict motions and has therefore waived this issue on appeal.
 
 
 10
 Our review of the evidence in plaintiff's favor establishes that substantial evidence permitted the jury to conclude no probable cause existed to arrest plaintiff for resisting, opposing, impeding, intimidating or interfering with a wildlife officer execution of his duties. Defendant McKenzie and officer Arnold encountered plaintiff after completing their questions of Bivens. Prior to the encounter McKenzie and Arnold had entered the plant in an unmarked vehicle and ignored posted security regulations. When plaintiff asked for identification and the purpose of the wildlife officers' visit, McKenzie refused to explain and threatened to arrest plaintiff for suggesting the wildlife officers wait until security arrived to investigate the matter. Plaintiff's evidence showed he was merely investigating the officers' unauthorized excursion into the plant and that he may have kept them five minutes from going home in doing so, but never threatened, opposed, impeded, resisted, or interferred with the officers in their attempt to question Bivens or any other Department of Wildlife duties.
 
 
 11
 Defendant Webb argues that, as a matter of law, the court was required to direct a verdict on plaintiff's Fourth Amendment false arrest claim because he merely responded to McKenzie's call for assistance and was entitled to rely on McKenzie's finding of probable cause. In our view, the record contains facts which would allow the jury to find that 1) Webb, dressed in plain clothes and without identifying himself or presenting a warrant, actually initiated the arrest despite the wildlife officers' request for assistance solely in transporting plaintiff; 2) although Webb knew of no probable cause and plaintiff had committed no offense in Webb's presence and offered resistance only after he was told he would be arrested, Officer Webb nonetheless reported that plaintiff was properly (i.e. with probable cause) arrested for resisting arrest; and 3) Webb primarily arrested plaintiff because he ordered the officers off TVA property and challenged their authority. See Joint Appendix Vol. II pp. 301-306, 309-311, 396, 440, 476. On this record, defendant Webb was not, as a matter of law, entitled to a directed verdict or to a defense of good faith immunity on the ground that he merely assisted in the arrest and reasonably relied on officer McKenzie's finding of probable cause.
 
 
 12
 Defendants jointly argue that contrary to their proof showing they had probable cause to arrest, the jury instruction on plaintiff's 14th Amendment claim of excessive force caused the jury to incorrectly conclude plaintiff's arrest was illegal. They argue that by failing to direct a verdict on the excessive force issue, the court permitted the jury to assume the arrest was illegal. The court instructed:
 
 
 13
 Every person has a right to resist unlawful arrest or a legal restraint of him and may use such force as necessary top do so until it becomes obvious to him that such arrest will be effected in which case he is required to cease resisting an unlawful arrest if there is danger of taking the life or shedding blood.
 
 
 14
 We do not conclude that the jury instructions considered as a whole precluded the jury from finding probable cause existed. The court also instructed the jury that '. . . even if you should find that the arrest of the plaintiff in this case was unlawful, that is to say was based on probable cause, the plaintiff still has a right to be protected against the use of unreasonable force or an unusual amount of force in making the arrest.' Moreover, as neither defendant objected to this portion of the court's instructions and no 'interests of justice' require our review, an appeal on this ground cannot be entertained. Batesole v. Stratford, 505 F.2d 804, 807-808 (6th Cir. 1974).
 
 
 15
 Defendants also contend that in his closing argument, counsel for plaintiff improperly referred to collateral sources and explained that taxpayers' liability for unemployment benefits was separate from defendants' liability. Defendant Webb objected to this line of argument but did not move for mistrial or curative instruction. Defendant McKenzie failed to object and is therefore precluded from raising this issue on appeal. After the jury retired, the court admonished counsel that reference to the jury as taxpayers was improper. The court later refused to instruct the jury on collateral sources as earlier requested by plaintiff's counsel. In our view, counsel for plaintiff improperly referred to taxpayers during his effort to counter evidence submitted by defendant's counsel showing that plaintiff had received benefits from collateral sources such as TVA health benefits, sick pay, worker's compensation and that he might receive more remuneration from his efforts to regain his former position and salary. Counsel attempted to explain that these benefits, which are primarily the taxpayers' liability, in no way diminish defendants' liability for the injuries inflicted on plaintiff. Given that plaintiff's counsel did not insinuate the jury would incur further liability as taxpayers if guilt were not found, that defendant Webb did not request a new trial on this ground, and that the court compensated counsel's error by rescinding a grant of plaintiff's request for a jury instruction on defendant's evidence of collateral sources, we find no prejudice resulted which affected the verdict and required a new trial.
 
 
 16
 Finally, defendants contend that the court's failure to grant a remittitur permitted an improper assessment of compensatory and punitive damages. We do not agree. The compensatory damage award was determined within the parameters set out in Smith v. Heath, 691 F.2d 220, 226-27 (6th Cir. 1982) and does not constitute a prejudicial or irrational assessment of damages beyond the proof submitted by plaintiff. Similarly, the record shows the punitive damages award in this case is sustained by evidence allowing the jury to conclude the officers acted with 'reckless or callous' disregard to the federally protected rights of others. See Smith v. Wade, 461 U.S. 30, 56 (1983).
 
 
 17
 Accordingly, the district court judgment is affirmed.
 
 
 
 *
 Honorable S. Arthur Spiegel, U.S. District Court, Southern District of Ohio, sitting by designation
 
 
 [1]
 The district court directed a verdict for Scott Helton. The jury awarded no recovery against wildlife officer Arnold or police officer Mark Taylor