**Steven LANTROOP, Plaintiff/Appellee,**

v.

**John MORELAND,
Defendant/Appellant.**

Court of Appeals of Tennessee,
Middle Section at Nashville.

Nov. 6, 1992.

Opinion on Denial of Rehearing
Dec. 2, 1992.

Application for Permission to Appeal
Denied by Supreme Court
March 1, 1993.

Denty Cheatham, Cheatham & Palermo, Nashville, for defendant/appellant.

John S. Colley, III, Colley & Colley, Columbia, for plaintiff/appellee.

## OPINION

KOCH, Judge.

This appeal involves a malicious prosecution action brought by a contractor against a property owner who had accused him of stealing tools and construction materials from a job site. The contractor sued the landowner in the Circuit Court for Williamson County after the criminal charges against him were dismissed for lack of probable cause. A jury awarded the contractor $10,000 in compensatory damages and $45,000 in punitive damages, and the landowner has appealed. We find that the judgment must be set aside and a new trial awarded because of errors in the manner in which the punitive damages issue was presented to the jury and in the trial court's instructions concerning the elements of a malicious prosecution cause of action.

### I.

John Moreland and his wife owned a 55-acre farm on Carothers Road in Franklin. They began constructing a lavish, 17,500 square foot geothermal house in 1983 or 1984. The house was to be constructed underground and was to be built mostly of concrete. Mr. Moreland served as his own designer and general contractor.

In September 1986 Mr. Moreland hired Steven Lantroop and Gary Humble to complete a portion of his indoor pool. Mr. Lantroop and Mr. Humble were partners in a company called "All About Pools" and were adept in applying gunite—pneumatically placed concrete. Mr. Moreland was pleased with their work and, within a month, put Mr. Lantroop and Mr. Humble to work finishing interior walls and cutting holes for doors, duct work, and sky lights.

The work progressed without incident until December 1986 when Mr. Moreland told Mr. Lantroop and Mr. Humble that he did not want "two bosses" on the job. Mr. Humble decided to leave for St. Louis but apparently not before he withdrew $10,000 from the All About Pools account without Mr. Lantroop's knowledge. Mr. Humble's unanticipated withdrawal placed Mr. Lantroop in a precarious financial position.

Mr. Lantroop explained his predicament to Mr. Moreland in late December 1986. Mr. Moreland agreed to help Mr. Lantroop reduce his overhead by providing free housing for Mr. Lantroop's crew and by buying some of the construction materials himself. The work continued satisfactorily during January and February 1987. But after Mr. Lantroop lost one of his trucks by failing to keep up the lease payments, Mr. Moreland became concerned about whether Mr. Lantroop was paying his suppliers and whether Mr. Lantroop was overcharging him for labor.

The relationship between Mr. Lantroop and Mr. Moreland soured further when Mr. Humble returned to Franklin in late March 1987. Mr. Humble told Mr. Moreland that he wanted to go back to work for him and that he needed to sell some of the gunite equipment Mr. Lantroop was using in order to pay some debts. He also warned Mr. Moreland to be on guard for Mr. Lantroop's overcharges.

The three men met in Mr. Moreland's office several days later to discuss their relationship and the work. Mr. Lantroop told Mr. Humble that he expected repayment of the money Mr. Humble had taken when he left the job several months earlier. Mr. Lantroop came away from the meeting with the impression that Mr. Moreland was getting ready to replace him with Mr. Humble.

Mr. Moreland later questioned the accuracy of the labor charges in Mr. Lantroop's April 3, 1987 bill and asked to meet with him on April 6, 1987 to discuss it. The men apparently had a misunderstanding concerning where the meeting would be held. Mr. Lantroop went to Mr. Moreland's office in Franklin, while Mr. Moreland went to the job site.

Mr. Moreland waited for Mr. Lantroop for several hours and, when he did not appear, told Mr. Lantroop's foreman that "Lantroop was out of there" and that they should pack up and leave the job site.[1] The foreman instructed the crew to cease work and to begin cleaning their equipment. He also passed along Mr. Moreland's comments when Mr. Lantroop arrived at the job site later in the afternoon.

Mr. Lantroop instructed his crew to load up their equipment, and he and his men left the job site in the late afternoon. Another contractor working on the house telephoned Mr. Moreland later that evening to tell him that he thought Mr. Lantroop and his crew had packed up their equipment and left. After trying unsuccessfully to reach Mr. Lantroop by telephone, Mr. Moreland went to the job site and confirmed that Mr. Lantroop had indeed left.

Mr. Moreland toured the job site the next morning accompanied by Mr. Humble. He determined that several pieces of construction equipment and some building supplies were missing. Mr. Humble also informed him that a number of pieces of gunite and masonry equipment belonging to him were missing. Mr. Moreland telephoned the Williamson County Sheriff to report the theft.

Even though no one had seen what Mr. Lantroop had loaded in his truck, Mr. Moreland informed the deputy sheriff investigating the complaint that Mr. Lantroop had taken 200 gallons of diesel fuel, a concrete gun, swimming pool tile, welding equipment, lumber, and a sump pump. Mr. Humble informed the deputy that Mr. Lantroop had taken over $12,000 worth of gunite and concrete equipment and other construction materials. Mr. Moreland and Mr. Humble also told the deputy where Mr. Lantroop was working in Columbia and warned him that Mr. Lantroop would "most likely leave the state" the following day.

On April 8, 1987, Mr. Moreland appeared before an judicial commissioner in Franklin and signed an affidavit charging Mr. Lantroop with grand larceny and stating that he had removed approximately $2,000 worth of "construction items and personal property" belonging to Mr. Moreland from the job site. Based on the affidavit and the deputy's investigative report, the judicial commissioner issued a warrant for Mr. Lantroop's arrest. Mr. Humble never pressed criminal charges against Mr. Lantroop. Instead, he went to work for Mr. Moreland for several months and then disappeared.

Two Williamson County officers found Mr. Lantroop in Columbia on April 9, 1987 and placed him under arrest. After being informed of the charges, Mr. Lantroop freely admitted that he had taken gunite equipment and other items away from Mr. Moreland's property but insisted that the items belonged to him. He also showed the officers the equipment in his truck and later wrote out a detailed statement identifying all his equipment and stating that Mr. Moreland still owed him "somewhere between $10,000 & $40,000." After reading Mr. Lantroop's statement, one of the investigating officers concluded that they were in the middle of a civil dispute between an owner and contractor.

Shortly after being released on bond, Mr. Lantroop returned Mr. Moreland's sump pump after discovering it among the other equipment in his truck. Mr. Moreland also discovered that his plumber had borrowed

---

1. Mr. Moreland denied that Mr. Lantroop's foreman was at the job site on April 6, 1987 and that he told him that Mr. Lantroop was "out of there."

the concrete gun he had reported stolen. Neither Mr. Moreland nor the authorities ever inventoried the contents of Mr. Lantroop's truck, and no evidence was ever obtained that Mr. Lantroop had taken any of the other property that Mr. Moreland had reported stolen.

Mr. Moreland was the only witness at the May 27, 1987 hearing in the Williamson County General Sessions Court. Neither Mr. Humble, nor the investigating officers, nor the other workers at the job site testified even though they were available. After listening to Mr. Moreland's testimony, the general sessions judge dismissed the warrant finding "no probable cause."

Mr. Moreland believed that there had been a "miscarriage of justice." His lawyer warned him that he faced the possibility of a malicious prosecution lawsuit and, even though the warrant had already been dismissed for lack of probable cause, suggested that he attempt to obtain an indictment against Mr. Lantroop as a defensive maneuver. Mr. Moreland attempted to bring the case before the grand jury, but the grand jury refused to indict Mr. Lantroop, in Mr. Moreland's words, "on direct orders of Joe Baugh [the district attorney general]."

Mr. Lantroop filed a malicious prosecution action against Mr. Moreland in April 1988. Mr. Moreland denied the claim and counter-claimed for conversion of the property he claimed Mr. Lantroop had stolen from the job site. Following a three-day trial in April 1991, a jury returned a verdict in Mr. Lantroop's favor and awarded him $10,000 in compensatory damages and $45,000 in punitive damages. Mr. Moreland then hired a new lawyer and perfected this appeal.

## II.

■ While this appeal was pending, the Tennessee Supreme Court handed down two decisions affecting the trial of malicious prosecution cases where punitive damages are sought. In *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn.1992), the Supreme Court redefined the ingredients for a punitive damages claim and established a new procedure requiring bifurcated trials when punitive damages are re-

quested. In *Roberts v. Federal Express Corp.*, 842 S.W.2d 246 (Tenn.1992), the Court determined that the jury, not the trial court, should determine whether the defendant in a malicious prosecution action initiated the criminal proceedings against the plaintiff without probable cause.

The parties have now filed briefs concerning the applicability of these decisions to this case. We have determined that the entire judgment must be vacated and the case remanded for a new trial.

### A.

■ Notwithstanding Mr. Lantroop's claim that the language in the *Hodges* opinion concerning its application to other cases is dicta, there is no question that the *Hodges* decision applies to this case. The Supreme Court specifically stated that "the changes in the law we now announce are applicable to all cases presently pending in the trial and appellate courts." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d at 902.

The Supreme Court itself has applied *Hodges* to other pending cases, *Ward v. Terminix Int'l, Inc.*, No. 01–A–01–9008–CV–00283, 17 T.A.M. 38–5, 1992 WL 227405 (Tenn. Sept. 14, 1992), and so has this court. *Pullen v. Textron, Inc.*, 845 S.W.2d 777, 779 (Tenn.Ct.App.1992); *Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 435–36 (Tenn.Ct.App.1992).

The manner in which the issue of punitive damages was presented to the jury in this case is inconsistent with the *Hodges* requirements in three material ways. First, the trial court did not bifurcate the question of the amount of punitive damages from the rest of the trial thereby permitting the jury to consider the evidence of Mr. Moreland's financial status during the liability phase of the trial. Second, the trial court's instructions are inconsistent with the instructions now required by *Hodges*. Third, the trial court did not review and set forth its reasons for approving or decreasing the punitive damages award.

Accordingly, the punitive damages award must be set aside, and the case remanded for a new trial to determine whether Mr. Lantroop is entitled to punitive damages

and, if so, the amount. What remains to be decided is whether other errors in the record entitle Mr. Moreland to a new trial on the issues of liability and actual damages as well.

### B.

The manner in which the trial court submitted the malicious prosecution issue to the jury in this case is curious indeed. In addition to using the pattern jury instruction concerning the elements of a malicious prosecution claim, *see* 8 Tenn.Prac.T.P.I.—Civil 8.22, the trial court also provided the jury with four "special questions" to guide them in their deliberations.

While the document containing the questions that was actually passed to the jury is for some unexplained reason not included in the record, the transcript contains the following recitation by the trial court:

> Question number one, Does the preponderance of the evidence establish that Mr. Lantroop did not intentionally take possession of property which he knew was owned by Mr. Moreland with the intent to permanently deprive Mr. Moreland of that property? Answer yes or no.
>
> That question gets you to answer the question, has Mr. Lantroop proved by a preponderance of the evidence that he is innocent, that he did not take property belonging to Mr. Moreland, that he knew was Mr. Moreland's property and that he was taking with an intent to deprive Mr. Moreland of his property permanently. That's what larceny is. So that's the purpose of that question.

Mr. Moreland challenged this instruction in his motion for a new trial and properly raises the issue on appeal. The manner in which the trial court submitted malicious prosecution issues to the jury is inconsistent with the law as it stood when this case was tried and is inconsistent with the new requirements of the *Roberts v. Federal Express Corp.* opinion.

■ Malicious prosecution actions contain three essential elements. In order to recover, a plaintiff must prove (1) that the defendant instituted a prior suit or judicial proceeding without probable cause, (2) that the defendant instituted the suit or proceeding with malice, and (3) that the prior suit or proceeding was finally terminated in the plaintiff's favor. *Roberts v. Federal Express Corp., supra,* 842 S.W.2d at 247–48; *Lewis v. Allen,* 698 S.W.2d 58, 59 (Tenn.1985); *Carter v. Baker's Food Rite Store,* 787 S.W.2d 4, 6 (Tenn.Ct.App.1989).

■ The actual guilt or innocence of the plaintiff is not directly at issue in a malicious prosecution case. *F.W. Woolworth Co. v. Connors,* 142 Tenn. 678, 681, 222 S.W. 1053, 1053 (1919); *Raulston v. Jackson,* 33 Tenn. (1 Sneed) 128, 133–34 (1853); *Sullivan v. Young,* 678 S.W.2d 906, 912 (Tenn.Ct.App.1984); *Bry–Block Mercantile Co. v. Proctor,* 13 Tenn.App. 45, 54 (1931). The controlling issue is whether the defendant acted without probable cause when it initiated the judicial proceedings against the plaintiff.

■ While the defendant may be able to prove that it acted with probable cause by introducing evidence that the plaintiff actually committed the crime for which he or she was charged,[2] the plaintiff need not establish his or her innocence in order to recover, and the defendant need not establish the plaintiff's guilt in order to mount a successful defense. In deciding a malicious prosecution case, the trier of fact need only focus on three issues: (1) were the underlying judicial proceedings initiated by the defendant finally terminated in the plaintiff's favor, *Christian v. Lapidus,* 833 S.W.2d 71, 73 (Tenn.1992), (2) would the facts and circumstances known to the defendant at the time he or she initiated the judicial proceedings have led an ordinarily prudent person to believe that the person accused was guilty of the crime charged, *Roberts v. Federal Express Corp., supra,* 842 S.W.2d at 248, and (3) whether the defendant initiated the judicial proceedings against the plaintiff with malice. *Roberts v. Federal Express Corp., supra,* 842 S.W.2d at 248.

---

**2.** *See Sadek v. Nashville Recycling Co.,* 751 S.W.2d 428, 431 (Tenn.Ct.App.1988); *Miller v. Martin,* 10 Tenn.App. 149, 153 (1929).

A trial court's instructions to the jury should be accurate, plain, and understandable. *Street v. Calvert,* 541 S.W.2d 576, 584 (Tenn.1976); *Grissom v. Metropolitan Gov't,* 817 S.W.2d 679, 685 (Tenn.Ct. App.1991). They should inform the jury of the legal principles applicable to the issues in the case, *Mitchell v. Smith,* 779 S.W.2d 384, 390 (Tenn.Ct.App.1989), but should not contain inaccurate or inapplicable statements of legal principles that will confuse the jury.

The law as it existed at trial required that the probable cause issue be resolved in one of two ways—either with a hypothetical question or by special findings of fact.[3] The trial court apparently believed that its four special questions were consistent with the latter procedure since it announced that it would be unable to prepare a satisfactory hypothetical question. However, the trial court itself conceded that its questions were "kind of awkward" and that "... I will just let them [the jurors] struggle with the double negatives. They'll have at least one strong willed person on there to keep them straight."

Viewing the trial court's instructions as a whole, we find that they are misleading because they divert attention away from one of the key issues in the case—whether the facts and circumstances known to Mr. Moreland when he swore out the warrant against Mr. Lantroop would have led an ordinarily prudent person to believe that Mr. Lantroop was guilty of grand larceny. We also find that the instructions more likely than not affected the jury's deliberations with regard to liability. Therefore, we vacate the entire verdict and remand the case for a trial on liability and actual damages in addition to punitive damages if Mr. Lantroop continues to request them.

### III.

We find Mr. Moreland's other issues to be without merit. Accordingly, we reverse the judgment and remand the case to the trial court for a new trial. We also tax the costs of this appeal in equal proportions to Steven Lantroop and his surety and to John Moreland for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.

### OPINION ON PETITION FOR REHEARING

The appellee's Tenn.R.App.P. 39 petition for rehearing raises no issue that this court has not already considered. In our original opinion, we held that question number one should not have been submitted to the jury because it diverted attention away from one of the key issues in the case.

The petition for rehearing is, therefore, denied.

/s/ Samuel L. Lewis
SAMUEL L. LEWIS,
JUDGE
/s/ Ben H. Cantrell
BEN H. CANTRELL,
JUDGE
/s/ William C. Koch, Jr.
WILLIAM C. KOCH, JR.,
JUDGE

---

**3.** *See Logan v. Kuhn's Big K Corp.,* 676 S.W.2d 948, 951–52 (Tenn.1984); *Lewis v. Williams,* 618 S.W.2d 299, 300–01 (Tenn.1981). The Tennes- see Supreme specifically overruled *Logan* and *Lewis* in *Roberts v. Federal Express Corp., supra,* 842 S.W.2d at 249.