IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 12, 2017 Session

## STATE OF TENNESSEE v. KANDI SUE GAINES

**Appeal from the Circuit Court for Lawrence County**
**No. 33715    J. Russell Parkes, Judge**

_____

### No. M2016-02515-CCA-R3-CD

_____

The Defendant, Kandi Sue Gaines, was convicted at a Lawrence County Circuit Court bench trial of shoplifting property valued at $500 or less, a Class A misdemeanor, for which she is serving an eleven-month, twenty-nine-day sentence on probation. *See* T.C.A. § 39-14-146 (2014) (amended 2017) (theft of property involving merchandise). On appeal, she contends that the evidence is insufficient to support her conviction. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT L. HOLLOWAY, JR., JJ., joined.

Claudia S. Jack (at trial and on appeal), District Public Defender; Travis B. Jones (at trial and on appeal), Assistant District Public Defender; and Brandon E. White (on appeal), Columbia, Tennessee, for the appellant, Kandi Sue Gaines.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Brent Cooper, District Attorney General; Christi Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant's conviction results from a September 29, 2015 incident involving cosmetics items valued at $317 at a Walmart store. The evidence shows that the Defendant placed the items inside a cosmetic bag, which was also Walmart merchandise. The State's theory was that the Defendant's conduct constituted shoplifting, whereas the Defendant's position was that she merely placed the items inside the bag in order to keep them from falling through the open grid of her shopping cart.

No transcript was prepared of the trial, but a statement of evidence reflects that the following evidence was offered:

Timothy Huntley, a Walmart asset protection employee, testified that he observed the Defendant, who had several items in her cart and was openly carrying a firearm at her side, in the cosmetics department. He saw her take a black cosmetic bag from a shelf, remove the price tag, and place the item in her cart. He said the Defendant selected cosmetic items and placed them inside the unzipped bag. Because Walmart policy prohibited him from approaching an armed, suspected shoplifter, he called the police. Officer Jason Lee, who was already inside the store, responded. Mr. Huntley said he and Officer Lee watched the Defendant continue to place cosmetics into the black bag in her cart. Mr. Huntley said he and Officer Lee approached the Defendant, disarmed her, and took her to the back of the store for questioning. Mr. Huntley said the Defendant stated she did not intend to steal the merchandise and that between cash and her debit card, she had approximately $175 available for her purchases that day. He did not ask whether she had credit cards available for any purchases. Another employee scanned the cosmetics that were inside the bag and created a receipt showing the merchandise was valued at $317. The receipt was received as an exhibit. Mr. Huntley identified a video recording from the store's security footage, which showed the Defendant in the cosmetics department from 12:05 p.m. until 12:43 p.m. The recording showed the Defendant placing items into a bag inside her cart and showed two men approach her and escort her off camera.

Mr. Huntley did not testify that the Defendant closed the cosmetics bag by zipping it after placing items inside the bag. He said the Defendant did not place store merchandise inside the backpack she wore, nor did she place the backpack inside the cart at any point during his observation. He did not locate the price tag from the cosmetic bag, nor did he locate protective plastic from the bag's handles or any filling materials. He said the items inside the makeup bag were plastic-wrapped lip gloss and lipstick cartridges without plastic or cardboard backings. He said that although it was plausible the Defendant could have placed small items in the bag to prevent them from falling through the shopping cart's grids, the items could have been placed sideways in the cart in order to keep them inside the cart.

Lawrenceburg Police Officer Jason Lee testified that on September 29, 2015, he was inside Walmart when he received a dispatch call about a suspected shoplifter at the store. He met with Mr. Huntley and a store manager and learned a woman was suspected of shoplifting cosmetics. Officer Lee observed the Defendant select a lipstick cartridge and place it inside a cosmetics bag. He approached her, disarmed her, explained why he

had approached her, escorted her to the back of the store, and issued a shoplifting citation.

Officer Lee testified that Mr. Huntley did not tell him that the Defendant had removed a price tag from the cosmetics bag. Officer Lee did not see the Defendant move toward an exit or a cash register. He said she remained in the cosmetics department during the time he observed her. He said the cosmetics bag remained inside the Defendant's cart during his observations.

Jessie Gaines, the Defendant's husband, testified that he was not present on the date the Defendant received a shoplifting citation. He said that shortly after the Defendant received the citation, he photographed a black cosmetics bag in the Walmart cosmetics department. The photograph, which was on his cell phone, was displayed to the trial court but is not preserved in the appellate record. Mr. Gaines stated that on October 19, 2016, which was the day before the Defendant's trial, he went to Walmart and saw a black cosmetics bag with no price tag sitting upon a shelf in the cosmetics department. He thought the bag he saw on October 19, 2016, was the same one he had photographed shortly after the Defendant's shoplifting citation on September 29, 2015. Mr. Gaines stated that on October 19, 2016, he purchased a pink and black cosmetics bag at Walmart, which he said was identical, aside from the color to the black bag he saw on the shelf on the same date. He said he bought the pink and black bag in order for the trial court to see that the bags, other than the black one about which he testified, had packing material, plastic wrapping, and price tags. The record does not reflect that the pink and black bag was received as an exhibit.

The Defendant testified that on September 29, 2015, she went to Walmart to purchase paper plates, laundry detergent, and cosmetics. She said that due to Crohn's Disease, she had skin breakouts. She said that her friend, Amy, had recently helped identify a new cosmetics regimen for the Defendant. The Defendant said that upon arriving at Walmart, she went immediately to the cosmetics department, where she selected cosmetic brushes, eyeliner, blush, and foundation. She said she chose multiples of each item because she intended to photograph the items and send the photograph to Amy via text message in order for Amy to advise her as to which items to purchase. The Defendant said that because an item fell through the grid of her shopping cart, she decided to use a cosmetics bag to hold the items she selected. She said she intentionally chose a cosmetics bag without a price tag because she did not want to burden the store's staff by unpackaging a bag that was packaged for sale. She said she put all of the cosmetic items in the bag, without regard to whether they were too large to fall through the cart's grid. The Defendant said that she remained in the cosmetics department for about forty minutes because she suffered from attention deficit disorder.

-3-

The Defendant testified that she saw Mr. Huntley and Officer Lee watching her as she placed cosmetics into the bag. She said that when they approached her, she attempted to explain that she did not intend to shoplift any merchandise. She said that although she did not have enough money to purchase all of the items she selected, she had intended for Amy to help her choose the items to purchase. The Defendant said that Mr. Huntley and Officer Lee's intervention kept her from sending a text message to Amy. Regarding the amount the Defendant had available to spend that day, she said she had $175 available on a debit card and an unspecified additional amount of cash. She said she could have also used money from her husband's bank account if she had needed additional funds.

The Defendant was unable to identify the brands that Amy had suggested she buy. The Defendant acknowledged a 2007 shoplifting conviction from a Walmart store. She said that on the previous occasion, she had been at the store with a friend, that they had shopped separately, that the friend had stolen items without the Defendant's knowledge, and that the Defendant had agreed to plead guilty in order to "offset the amount of merchandise her friend had shoplifted." Relative to the present incident, the Defendant said she had not used a plastic handbasket to hold the cosmetic items because she had not wanted to walk to the front of the store to obtain one. She said that going to the pharmacy to ask for a bag for the items did not occur to her.

After receiving the proof, the trial court found that the State had proven beyond a reasonable doubt that the Defendant was guilty of the charged offense. This appeal followed.

The Defendant contends that the proof is insufficient to support her conviction. In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v.*

*Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

As relevant to this appeal, at the time of the offense, the shoplifting statute provided:

(a)  For purposes of § 39-14-103 [the theft statute], a person commits theft of property if the person, with the intent to deprive a merchant of the stated price of merchandise, knowingly commits any of the following acts:

(1)  Conceals the merchandise;

(2)  Removes, takes possession of, or causes the removal of merchandise;

. . .

(b)  In a theft prosecution under this section, unless applicable, the state is not required to prove that the defendant obtained or exercised control over the merchandise as required in a prosecution under § 39-14-103.

T.C.A. § 39-14-146 (2014) (amended 2017).

Viewed in the light most favorable to the State, the evidence reflects that the Defendant obtained a cosmetics bag, removed the price tag, and placed numerous cosmetics items in it. The Defendant testified that her friend Amy had identified a cosmetics regimen that worked well for the Defendant, but the Defendant could not identify any of the brands Amy recommended. The Defendant claimed she planned to send a text message to Amy regarding which items she should purchase. Nevertheless, the Defendant spent approximately forty minutes selecting cosmetics items without communicating with Amy. The trial court observed the testimony of the witnesses, including the Defendant. By its verdict, the court credited the testimony of the State's witnesses over that of the Defendant and her husband, as was its prerogative as the trier of fact. The evidence supports the court's finding that the Defendant knowingly took possession of the cosmetics inside of the bag with the intent to deprive Walmart of them.

In so holding, we have considered the Defendant's argument that the State failed to prove concealment of the merchandise in question. To support her argument, the

Defendant relies upon *Logan v. Kuhn's Big K Corp.*, 676 S.W.2d 948 (Tenn. 1984), a civil malicious prosecution action instituted by a plaintiff who had been cited for shoplifting from the defendant-store but who ultimately had the criminal charges dismissed. The Defendant argues that the cases are factually similar because the plaintiff in *Logan* had placed items in a shopping bag he obtained from a cashier after he was unable to obtain a shopping cart. *See Logan*, 676 S.W.2d at 949. The *Logan* plaintiff shopped in the health and beauty aids section of the defendant-store for about twenty minutes and placed items in the bag in a manner that an employee of defendant-store deemed suspicious. *See id.*

We are unpersuaded that the *Logan* decision is relevant to the Defendant's case. As we have stated, *Logan* was a civil malicious prosecution action. Perhaps more significantly, the underlying shoplifting charge which gave rise to the civil action in *Logan* involved now-repealed sections of the Criminal Code, one of which was the old shoplifting statute, and the other of which created a presumption of intent to convert unpurchased goods or merchandise to one's own use by virtue of concealment of the items. *See* T.C.A. §§ 39-3-1124 (1975) (amended 1981, 1983, 1984) (repealed 1989) (shoplifting), 39-3-1125 (1982) (repealed 1989) (presumption of intent arising from concealment). The Defendant in the present case focuses on the concealment aspect of *Logan*, but the allegations of the indictment charge that she "did unlawfully and knowingly conceal, take possession of and/or remove or cause the removal of" merchandise. These allegations permit a finding of guilt by either subsection (a)(1) or (a)(2) of Code section 39-14-146. Only subsection (a)(1) involves concealment. *Compare id.* § 39-14-146(a)(1) *with id.* § 39-14-146(a)(2). As such, *Logan* is not helpful in resolving the case at bar because the Defendant was charged alternatively with shoplifting involving concealment and shoplifting which did not require concealment.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE