IN THE COURT OF APPEALS OF TENNESSEE

FILED

January 21, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

RESIDENTS AGAINST INDUSTRIAL ) C/A NO. 03A01-9703-CV-00102
LANDFILL EXPANSION, INC. (RAILE),)
PERRY RUSSELL, DON BEAL, BETTY )
BEAL, GARY LONG and JUDY LONG, )
)
    Plaintiffs, )
)
and )
)
DIANNA WILLIAMS, )
) APPEAL AS OF RIGHT FROM THE
    Plaintiff-Appellant, ) McMINN COUNTY CIRCUIT COURT
)
)
)
v. )
)
)
)
DIVERSIFIED SYSTEMS, INC. and )
WILLIAM T. ALT, )
) HONORABLE JOHN B. HAGLER, JR.,
    Defendants-Appellees. ) JUDGE


For Appellant                          For Appellee William T. Alt

GARY A. DAVIS                          ELIZABETH G. ALT
Knoxville, Tennessee                   Chattanooga, Tennessee


                                       For Appellee Diversified
                                         Systems, Inc.

                                       NO APPEARANCE




O P I N I O N




VACATED AND REMANDED                              Susano, J.

The trial court granted the defendants, Diversified Systems, Inc. ("Diversified") and its attorney, William T. Alt ("Alt")[1], summary judgment on the complaint for malicious prosecution and abuse of process filed by the plaintiffs, Residents Against Industrial Landfill Expansion, Inc. ("RAILE") and six individuals[2] (collectively, "the plaintiffs"). Dianna Williams ("Williams") is the only plaintiff who has appealed. She presents the following questions for our review:

> 1. Did the trial court err in granting summary judgment in favor of Diversified and Alt?
>
> 2. Did the trial court err in failing to continue Diversified's and Alt's motions for summary judgment in order to allow further discovery?

I. *Facts*

The events leading to this litigation began in 1990, when Diversified applied to the Tennessee Department of Environment and Conservation for a permit to expand a landfill near Athens, Tennessee, which it had operated since approximately 1981. Diversified's application precipitated the incorporation of RAILE by several area residents concerned with the landfill's safety and environmental impact. The appellant Williams was not involved in the initial formation of RAILE.

---

[1] For ease of reference, Diversified and Alt will be collectively referred to as "the defendants."

[2] The individual plaintiffs are Perry Russell, Don Beal, Betty Beal, Gary Long, Judy Long and the appellant, Dianna Williams.

Members of RAILE, not including Williams, subsequently participated in a public hearing regarding the proposed landfill expansion and submitted written comments on the subject. They also appeared before the McMinn County Commission, seeking a resolution opposing the expansion of the landfill. During these appearances, members of RAILE made various statements regarding prior contamination problems at the landfill and the suitability of the proposed expansion.

While Williams first became involved with RAILE in 1992, her initial participation was limited to opposing an incinerator that had been proposed by a company other than Diversified. In her sworn affidavit, Williams states as follows:

> Prior to the time that Diversified sued me for $13.2 million in March 1993, I had not participated in any public hearings or McMinn County Commission meetings concerning the Mine Road Landfill[3]. I had not made any statements concerning the landfill to government officials or to the press.
>
> I did attend approximately three RAILE meetings at which the Mine Road Landfill was discussed and also attended a public hearing concerning the proposed Mine Road Landfill expansion in August 1993. I did not speak about my concerns regarding the landfill expansion at the public hearing in August 1993 because of the $13.2 million lawsuit that [Diversified] had filed against me. This was the extent of my involvement with RAILE concerning the Mine Road Landfill.

In June, 1991, prior to Williams' initial involvement with RAILE, that organization filed suit against Diversified in the United States District Court for the Eastern District of

---

[3]This is the landfill at which Diversified proposed its expansion.

Tennessee. RAILE's suit was an effort to remedy the discharge of pollutants from the Mine Road Landfill into two area streams. The District Court held that Diversified was required to obtain a discharge permit.[4] Pursuant to a February 10, 1993, settlement agreement in the federal court action, Diversified agreed to apply for a discharge permit, to comply with pollution limitations in the meantime, and to pay the fees and expenses of RAILE's attorneys.

Approximately one month after the settlement agreement was executed, Diversified filed suit in state court against RAILE and nine named individuals, including Williams. Three "John Doe" defendants were also sued. Diversified was represented by Alt in that action. The complaint, which was signed by Alt, sought $13.2 million in compensatory and punitive damages for alleged wrongful interference with Diversified's business relations. Specifically, Diversified alleged that RAILE and the individual defendants had made false and malicious statements to state officials and to the general public in an effort to defeat its application for a landfill expansion permit, and had sought to destroy Diversified's existing landfill operation by influencing others to cease doing business and/or breach contracts with Diversified. Significantly, the complaint failed to contain any specific allegations regarding any statements or actions by Williams.

---

[4]*See **Residents Against Industrial Landfill Expansion v. Diversified Systems, Inc.**, 804 F.Supp. 1036 (E.D.Tenn. 1992).*

On May 24, 1993, the trial court dismissed Diversified's complaint for failure to state a claim upon which relief could be granted.  The trial court denied Diversified's motion to amend its complaint, and Diversified appealed to this court.  We reversed the trial court's decision and remanded the case to the trial court.[5]  Thereafter, on May 18, 1994, Diversified, without amending its complaint, served the defendants with a notice of voluntary dismissal.

The plaintiffs, including the appellant Williams, filed the instant action on June 23, 1994, alleging that Diversified and its attorney, Alt, were guilty of malicious prosecution and abuse of process as a result of the lawsuit filed by Diversified against RAILE and the various individuals.  In addition to the general allegations supporting their causes of action, the plaintiffs alleged that Diversified and Alt filed the prior suit in order to punish, harass, and silence RAILE, its members, and other concerned citizens of McMinn County.

Following the filing of the instant malicious prosecution action, the plaintiffs served Diversified and Alt with interrogatories and a request for production of documents.  Diversified and Alt responded by moving for a protective order and a stay of discovery.  Williams then filed a motion to compel.  The trial court stayed all discovery, except for the depositions of the plaintiffs and three of Diversified's current and former officers.  The plaintiffs proceeded to depose these officers, and

---

[5]See **Diversified Systems, Inc. v. Residents Against Industrial Landfill Expansion, Inc., et al.**, C/A No. 03A01-9310-CV-00348, 1994 WL 66651 (Tenn.App., E.S., filed March 7, 1994, Sanders, J.).

the defendants commenced the depositions of the plaintiffs. A
dispute arose regarding discovery, resulting in the filing of
further motions by both sides. The trial court ultimately stayed
further discovery pending the filing of motions for summary
judgment by the defendants. In its order, the trial
court stated that, upon request of the plaintiffs in their
response to the forthcoming motions for summary judgment, it
would consider permitting additional discovery before ruling on
the motions.

The plaintiffs' response to the motions for summary
judgment that were subsequently filed by Diversified and Alt
included extensive and specific requests for further discovery.
The trial court, however, denied the plaintiffs' requests and
granted summary judgment in favor of both Diversified and Alt.
In so doing, it found that further discovery was not necessary;
that the facts "would have led an ordinarily prudent person to
believe that plaintiffs herein were guilty of tortious
interference with [Diversified's] business interests"; and that
there was no "genuine issue of material fact to support a finding
that [Alt] acted with malice in advising his client to proceed
with a civil action or that he was not fully informed of the
relevant allegations by his client."

II. *Standard of Review*

We measure the propriety of the trial court's grant of
summary judgment against the standard of Rule 56.04,

6

Tenn.R.Civ.P., which provides that summary judgment is appropriate where

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

We also note that the nonmoving party, in this case Williams, is entitled to the benefit of any doubt. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). The court must "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11. All facts supporting the position of the nonmovant must be accepted as true by the trial court. *Id*. at 212. It is only when the material facts are undisputed and conclusively demonstrate that the movant is entitled to a judgment that a trial court is justified in depriving a claimant of its right to a plenary trial; in all other instances, a trial on the merits is required. Summary judgment "is clearly not designed to serve as a substitute for the trial of genuine and material factual matters." *Id*. at 210.

When reviewing a grant of summary judgment, an appellate court must decide anew if judgment in a summary fashion is appropriate. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991); *Gonzalez v. Alman Constr. Co.*, 857 S.W.2d 42, 44-45 (Tenn.App. 1993). Since this determination involves a question of law, there is no presumption of correctness as to the

7

trial court's judgment.  **Id.; Hembree v. State**, 925 S.W.2d 513, 515 (Tenn. 1996).

### III.  *The Parties' Contentions*

Williams argues that the judgment of the trial court should be vacated for several reasons.  She contends that summary judgment was inappropriate because the defendants did not carry their burden of establishing (1) a lack of material factual issues and (2) entitlement to judgment as a matter of law.  In the alternative, she insists that the trial court's denial of the plaintiffs' request for further discovery constitutes error, in that it prevented the plaintiffs from fully and adequately responding to the defendants' motions for summary judgment.  She argues that her lack of participation in RAILE's opposition to the landfill expansion clearly indicates that there was no probable cause for an action against her.  Williams also contends that factual issues regarding Diversified's and Alt's motivation remain, as evidenced by the fact that their lawsuit fits all of the characteristics of a lawsuit filed to intimidate a citizen into silence regarding an issue of public concern.[6]  Finally, she argues that any statements attributable to her are protected by the First Amendment to the United States Constitution, and thus cannot form the basis for an action against her.

Alt, meanwhile, argues that the trial court did not abuse its discretion in limiting discovery, but in fact

---

[6]The legislature has recently recognized the evils of this type of lawsuit.  *See* T.C.A. § 4-21-1001, *et seq*.  This legislation was enacted after the underlying action was filed and hence is not applicable to this case.

8

restricted only discovery of irrelevant matters.  He also contends that a claim of malicious prosecution is not appropriate against an attorney under these circumstances, and that the evidence demonstrates that he acted with probable cause and without malice.

Diversified has not filed a brief or otherwise made an appearance on this appeal.

## IV.  *Applicable Law*

To prevail on a claim for malicious prosecution, a plaintiff must establish the following elements: 1) a prior action was instituted without probable cause; 2) the defendant brought such action with malice; and 3) the prior action was terminated in the plaintiff's favor.  *Roberts v. Federal Express Corp.*, 842 S.W.2d 246, 247-48 (Tenn. 1992); *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992); *Lewis v. Allen*, 698 S.W.2d 58, 59 (Tenn. 1985); *Lantroop v. Moreland*, 849 S.W.2d 793, 797 (Tenn.App. 1992).[7]

Probable cause exists when the facts and circumstances are sufficient to lead an ordinarily prudent person to believe an individual is guilty of the conduct alleged.  *Roberts*, 842 S.W.2d

---

[7]Several of the cases cited in this opinion involve malicious prosecution claims in which the underlying proceeding was criminal, rather than civil, in nature.  However, it has been noted that "the same general rules and limitations apply to an action founded upon a civil proceeding, vis-a-vis criminal proceedings." *Morat v. State Farm Mut. Auto. Ins. Co.*, 949 S.W.2d 692, 695 (Tenn.App. 1997).  It is clear that a malicious prosecution claim will lie for a wrongfully pursued civil action. *See Peerman v. Sidicane*, 605 S.W.2d 242, 245 (Tenn.App. 1980); *Evans v. Perkey*, 647 S.W.2d 636, 641 (Tenn.App. 1982).

at 248.  The existence of probable cause does not depend upon a subjective assessment of the defendant's mental state, but instead is "determined solely from an objective examination of the surrounding facts and circumstances."  *Id*.  It is now clear that such a determination is a question for the trier of fact. *Id*. at 249.

The element of malice generally addresses the subjective mental state of the defendant.  *Id*. at 248.  However, the existence of malice can be inferred from the fact that a lawsuit was brought without probable cause.  *Lewis v. Williams*, 618 S.W.2d 299, 303 (Tenn. 1981); *Carter v. Baker's Food Rite Store*, 787 S.W.2d 4, 8 (Tenn.App. 1989); *Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247, 252 (Tenn.App. 1982).[8]  This court has also held that in actions for malicious prosecution, a showing of a lack of probable cause will give rise to a rebuttable presumption of malice.  *Sullivan v. Young*, 678 S.W.2d 906, 911 (Tenn.App. 1984); *Kerney*, 648 S.W.2d at 252.  This is a presumption of fact.  *Lewis*, 618 S.W.2d at 303.  The issue of malice is a question of fact for the jury.  *Id*.

The defendants acknowledge that the third element of Williams' claim -- termination of the prior suit in favor of the plaintiff -- is satisfied in this case.  It is clear that the voluntary termination by non-suit of a complaint satisfies the

---

[8]In *Roberts v. Federal Express Corp.,* 842 S.W.2d 246 (Tenn. 1992), the Supreme Court overruled *Lewis* and other decisions to the extent that they had held that the question of probable cause was ultimately a question of law for the court.  However, the proposition for which *Lewis*, *Carter* and *Kerney* are cited in this opinion remains valid.

10

requirement of a favorable termination, provided such termination is not in connection with a settlement or compromise, or undertaken in order to re-file the action in a different forum. *Christian*, 833 S.W.2d at 74.

With regard to malicious prosecution claims brought against attorneys responsible for filing the underlying lawsuit, the general rule is that an attorney is not immune from liability solely by reason of his status. *See* Debra E. Wax, Annotation, *Liability of Attorney, Acting for Client, for Malicious Prosecution*, 46 A.L.R.4th 249, 259 (1986). Tennessee recognizes this general proposition. *See* **Evans v. Perkey**, 647 S.W.2d 636 (Tenn.App. 1982), and **Peerman v. Sidicane**, 605 S.W.2d 242 (Tenn.App. 1980).

V. *Analysis*

A. *Williams' Claim Against Diversified*

As noted earlier, Diversified did not file a brief in connection with this appeal. It apparently relies on the record to support the trial court's grant of summary judgment.

We turn first to the element of probable cause. In the underlying action, Diversified alleged that RAILE and its individual members, including Williams, had wrongfully interfered with its business relations. Diversified claimed that the RAILE members had made false and malicious statements in order to obtain a denial of its application to expand the landfill, and

11

had sought to destroy its business by influencing others to breach contracts or cease doing business with Diversified. However, neither Diversified's complaint, nor the affidavits and exhibits accompanying its motions for summary judgment, contain any specific allegations regarding Williams. Furthermore, none of the witnesses deposed by Williams testified as to any specific knowledge of Williams' involvement.

George Randi, who was President and Chief Executive Officer of Diversified at the time of the events in question, testified in his deposition that he had been "told" that Williams had made certain statements. However, he could not elaborate on the statements and did not recall who had given him this information. He also testified that he had assumed that if Williams was a member of RAILE, then she was necessarily involved in its opposition to the landfill. Likewise, Ralph Deporter, a member of Diversified's Board of Directors at the time, testified in his deposition that he was unsure whether Williams had participated in RAILE's opposition to the landfill expansion prior to the filing of Diversified's lawsuit against her. He also stated that he had no information that would lead him to believe that Williams had made any false statements regarding Diversified's compliance with its landfill permit. By the same token, Paul Ray Seaton, a shareholder and former officer of Diversified, testified in his deposition that he had only seen Williams' name in the paper or heard it come up in connection with RAILE. Like the other witnesses, Seaton could offer no specific testimony regarding Williams' involvement.

12

In opposition to Diversified's allegations, Williams submitted an affidavit in which she states that she was not involved in RAILE's opposition to the landfill prior to the filing of Diversified's lawsuit against her. She contends that she made no statements to government officials or the press and that she attended no public hearings or county commission meetings prior to the filing of Diversified's lawsuit. Williams states that her only participation in the opposition to the landfill consisted of attending three RAILE meetings, and one public hearing -- all in August, 1993, well after Diversified filed its action against her.

Thus, there is evidence that Williams was not involved in RAILE's opposition to the landfill expansion prior to the filing of Diversified's suit, and that she did not make any statements regarding Diversified or the landfill prior to the time the underlying action was filed. Such evidence necessarily raises a question as to whether Diversified had probable cause to file suit against her. From our "objective examination of the surrounding facts and circumstances", *Roberts v. Federal Express Corp.*, 842 S.W.2d 246, 248 (Tenn. 1992), we find that there is an issue of material fact as to whether an ordinarily prudent person would have been led to believe that Williams was guilty of wrongful interference with Diversified's business interests. *Id.* The facts before the trial court, and now before us, clearly do not negate the element of lack of probable cause.

We turn next to the element of malice. As noted earlier, the element of malice may be inferred from an absence of

probable cause.  *Lewis v. Williams*, 618 S.W.2d 299, 303 (Tenn. 1981); *Carter v. Baker's Food Rite Store*, 787 S.W.2d 4, 8 (Tenn.App. 1989); *Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247, 252 (Tenn.App. 1982).  Thus, if there are issues of disputed fact in the instant case regarding the existence of probable cause, it follows that the issue of malice is still a matter of disputed fact by virtue of the aforesaid inference.  It is clear that the facts before us would support a finding that Diversified did not have probable cause to sue Williams.  This gives rise to a presumption of malice.

The record reveals that Diversified failed to negate any one of the elements of Williams' claim of malicious prosecution.  Taking "the strongest legitimate view of the evidence" in favor of Williams, and allowing "all reasonable inferences" in her favor, *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993), we find that summary judgment for Diversified is not appropriate.

B.  *Williams' Claim Against Alt*

We now turn to the grant of summary judgment in favor of Alt.  Alt contends that Williams satisfied neither the probable cause nor the malice element of her claim.  Alt also maintains that "malicious prosecution is a cause of action against a party, not an attorney"; however, he has cited no authority, nor have we found any, to indicate that an attorney is immune from such a claim.  As we have indicated earlier, the case

14

authority is to the contrary.  *See **Evans***, 647 S.W.2d at 642;

***Peerman***, 605 S.W.2d at 245.

Allowing "all reasonable inferences" in Williams's favor, ***Byrd***, 847 S.W.2d at 210, we conclude that the record reflects material disputes as to both probable cause and malice. The existence of probable cause does not depend on Alt's subjective mental state, but instead requires "an objective determination of the reasonableness of [his] conduct in light of the surrounding facts and circumstances."  ***Roberts***, 842 S.W.2d at 248.  He therefore cannot negate the lack of probable cause element of Ms. Williams' claim simply by contending that he filed the action on behalf of his client and in good faith.  As determined from the surrounding facts and circumstances, issues of fact remain regarding whether an ordinarily prudent attorney would have proceeded to file the instant action against her.  ***Id.***

The element of malice, on the other hand, does involve a question of subjective intent.  ***Id.***  However, as with the claim against Diversified, there is an issue as to whether probable cause existed; since an absence of probable cause gives rise to an inference of malice, ***Lewis***, 618 S.W.2d at 303, ***Carter***, 787 S.W.2d at 8, ***Kerney***, 648 S.W.2d at 252, factual disputes regarding malice remain as well.

Alt filed an affidavit in this case in which he denied "that he had any ill-will or animosity against any of the plaintiffs."  His affidavit consists of a series of sworn denials

15

with respect to the allegations against him in the complaint. Illustrative of these denials is paragraph 13 of the affidavit:

> Affiant denies that he acted maliciously or oppressively in initiating and prosecuting the prior lawsuit and its appeal. He further denies that he had any intent to punish, intimidate, vex, harass, annoy, injure, or damage any of the plaintiffs or sought to frighten or intimidate them in any manner.

On the issue of probable cause, Alt's affidavit contains sparse facts:

> Affiant became aware through media coverage that Diversified in connection with its application for expansion of its landfill was being opposed by citizens of McMinn County who were residents in the vicinity of the landfill.
>
> Any subsequent information learned concerning the name of the group, their members, etc., would all be subject to the attorney/client privilege.

Alt's affidavit did not present facts showing that he had probable cause to file the underlying action.[9] That affidavit certainly was not sufficient to establish undisputed facts regarding the issue of probable cause as to Williams once she filed an affidavit reflecting *no* involvement in the matters which prompted the filing of the underlying action.

In order to secure summary judgment, Alt had to negate at least one element of Williams' claim. He did not show that he

---

[9]As shown in a different context, an attorney, in filing a lawsuit, has an obligation to conduct a reasonable inquiry regarding the factual basis for the suit. *See* Rule 11.02, Tenn.R.Civ.P.

16

had probable cause to institute an action against her on his client's behalf. With no facts in Alt's affidavit showing probable cause, and with Williams attesting to a total lack of involvement in the matters alleged in the underlying lawsuit, we are left with only one conclusion -- a total lack of probable cause which in turn gives rise to an inference of malice.

In summary, our analysis proceeds along the following lines. Williams did not participate in any of the matters upon which the underlying action was based and did not make any actionable statements. We know this because she says so in her affidavit and, as the nonmoving party, she is entitled to our full belief. While she was not, in fact, involved in any actionable conduct, we must still determine if Diversified and/or Alt were possessed of facts that would have led an ordinarily prudent person to believe she was guilty of such conduct. Neither Diversified nor Alt have placed before us any real facts showing Williams' involvement. This, plus her non-involvement in fact, presents a picture of no probable cause. A lack of probable cause leads to a presumption of malice. Thus, the record before us presents a lack of probable cause and malice -- the remaining elements of an action for malicious prosecution.

While an attorney can have probable cause to file a lawsuit and thereby avoid a malicious prosecution action or an abuse of process action,[10] see **Evans**, 647 S.W.2d at 642, it is

---

[10] Abuse of process has been defined as a "use of legal process to obtain a result it was not intended to effect, for wrongful purposes." **Evans**, 647 S.W.2d at 641. While this aspect of Williams' claim is not discussed extensively in the briefs, we have concluded that neither of the defendants is entitled to summary judgment as to this claim.

17

likewise clear that his or her involvement can present a factual scenario supporting a conclusion that the attorney was guilty of actionable conduct, *see* **Peerman**, 605 S.W.2d at 245.  In this case, we do not know the facts, if any, that prompted Alt to believe that Williams was guilty of the matters alleged in the underlying lawsuit.  Since this information is not now available to us, Alt is not entitled to a dismissal of this action.

C.  *Trial Court's Limitation of Discovery*

Having determined that the papers before us do not justify a grant of summary judgment to either of the defendants,

we pretermit the appellant's alternative basis for attacking summary judgment, i.e., the alleged failure of the trial court to allow additional discovery before deciding the defendants' motions for summary judgment.  We do not believe it appropriate for us to decide whether, and to what extent, additional discovery is appropriate in this case.  Those issues are best left to the trial court for future determination.

## VI.  *Conclusion*

For the foregoing reasons, we hold that the trial court erred in granting Diversified and Alt summary judgment as to the plaintiff Williams.  That portion of the trial court's judgment is hereby vacated.  In so holding, we express no opinion as to the merits of either claim.  Costs on appeal are assessed against the appellees.  This case is remanded to the trial court for such further proceedings as are appropriate, consistent with this opinion.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
William H. Inman, Sr.J.